[No. 3,728.]

## EMILE BAUER, EXECUTOR OF THE WILL OF HENRY S. BURR, DECEASED, *v.* WILLIAM M. PIERSON, H. W. FORTUNE, AND WILLIAM BOSWORTH.

NOTICE TO MORTGAGEE CONCERNING TITLE.—If a person is about to make a loan and take a mortgage upon land as security, and employs an agent, an attorney, to make the negotiation, a declaration made by a tenant in possession of the land to the agent that another person owns an interest in the land, is sufficient to put the mortgagee on inquiry, and if due diligence is not exercised in making such inquiry, the mortgage, even if the paper title appears to be in the mortgagor, is subject to the rights of such other person in the land.

CONSIDERATION OF TECHNICAL QUESTIONS.—If the Supreme Court is satisfied with the conclusions of the Court below upon a matter, it will not go into the consideration of technical questions not distinctly made in the Court below, and which do not involve a substantial right.

APPEAL from the District Court, Nineteenth Judicial District, City and County of San Francisco.

This is an action to foreclose a mortgage given by William M. Pierson to H. S. Burr for seven thousand dollars, dated December 29th, 1869, payable one year after date, upon two and one half fifty varas of land in block one hundred and nineteen, Western Addition. After the mortgage was given, H. S. Burr deceased, and plaintiff was appointed his executor.

William M. Pierson, one of the defendants, made default.

Defendant Fortune answered and set up that at the time the mortgage was given he was the owner of an undivided one half interest in the real estate covered by the mortgage.

The Court found the allegations of defendant Fortune's answer true, and ordered a foreclosure of the mortgage, and a sale of an undivided one half interest of the land described in the mortgage, in satisfaction of the mortgage.

In 1868 the title to block one hundred and nineteen, Western Addition, was in J. W. Coleman, and he leased the same

to Alfred S. Delany, for one year. Before the lease expired, Coleman deeded one half of the block to H. W. Fortune, and one half to William M. Pierson, and this prior to the 20th of May, 1869, and Delany attorned to the grantees.

On the 20th of May, 1869, Pierson deeded the whole block to Fortune, and on the twenty-second of the same month Fortune deeded a one half interest in said block to Pierson.

Neither of the last mentioned deeds were recorded, but the two deeds remained in the hands of Fortune until December, 1869, when Fortune delivered both deeds to Pierson, with the understanding that neither of them were to be recorded. This, however, was not known to Burr, nor was the existence of the deed from Pierson to Fortune actually known to Burr until after the mortgage was executed.

When the lease from Coleman to Delany expired, he held on under the same lease until after the mortgage was executed, paying rent to Fortune, who acted for himself and Pierson.

When Pierson applied for the loan, Burr sent his attorney to the land to see if the possession was consistent with the paper title, and he found Delany there in possession, who informed him that he held the land for Fortune, but that Fortune and Pierson were " partners in the land."

Finding the possession consistent with the paper title, and Pierson presenting and tendering to Burr a deed of Fortune's undivided one half interest in the block of land to be put on record first, Burr loaned the money and took the mortgage and had it recorded, Fortune's deed being first placed on record. Two days afterwards Fortune had the deed from Pierson to him recorded.

The Court below was of the opinion that Delany's saying to Taylor, Burr's attorney, that he was holding the land for Fortune, notwithstanding he said that Pierson was a partner in the land, made it incumbent upon Burr, before loaning the money, to have seen Fortune and inquired of him

as to his interest in the premises, and that, not having done so, he was charged with notice of Fortune's rights. The plaintiff appealed.

The other facts are stated in the opinion.

*G. W. Tyler,* for Appellant.

When land is owned by two tenants in common, and in possession of a third person, the tenant of both, and one tenant presents the deed of his cotenant, and mortgages or sells the land to a stranger, bona fide, is that stranger required to make inquiries as to any possible equities of his grantor's cotenant?

When one of two joint tenants mortgages less than one half of the premises held in common, and the mortgaged property is not more than sufficient to pay the mortgage, is not a Court of equity required to so deal with the mortgaged property as to preserve the security of the mortgage, if it can be done so as not to interfere with the rights of the cotenant?

As to the first point it is too late now in this State to inquire as to whether the rule was well or ill established, which holds that open, notorious, and exclusive possession and occupation of lands by a stranger to a vendor's title as of record, is sufficient to put a party upon inquiry as to the legal and equitable rights of the party in possession. The authorities are conflicting upon this point in other States and in England. (21 Missouri R. 313; 1 Rhode Island R. 125; 4 Gratt., Va. R., 407; 3 Ves. 478; 3 Atk. 275; 10 John. 451–457; *Dunham* v. *Day,* 18 John. 355.) They are also conflicting in this State. (*Mesick* v. *Sunderland,* 6 Cal. 297; *Smith* v. *Dall,* 13 Cal. 510.) But since the cases of *Lestrade* v. *Barth,* 19 Cal. 675; *Dutton* v. *Warschauer,* 21 Cal. 609; *Landers* v. *Bolton,* 26 Cal. 393; *Fair* v. *Stevenot,* 29 Cal. 486; *Killey* v. *Wilson,* 33 Cal. 693, we think the rule too well established in California to be open to controversy.

The case of *Pell* v. *McElroy* extends the rule a little, that the open, notorious, and exclusive possession of a vendor or the tenant of a vendor, after the execution of the deed, is a fact in conflict with the legal effect of his deed, and puts a purchaser upon inquiry as to the rights, legal and equitable, of such vendor. (*Pell* v. *McElroy*, 36 Cal. 268.)

Appellant does not desire to attack the rule in *Pell* v. *McElroy*, nor the one as to adverse possession established in the previous cases; but he respectfully submits that neither of these rules is applicable to the facts of this case.

In the case at bar, there was no possession "adverse to the title" under which Burr claimed; on the contrary the possession was strictly in accordance with the record title, for Delany was as much the tenant of Pierson as he was of Fortune. This case does not come within the rule established in the case of *Pell* v. *McElroy*, for the possession of Fortune, by his tenant, was not " adverse" to the title of record, nor was it " exclusive" in Fortune, for Delany was the tenant of both Fortune and Pierson. This case then is one of new impression in this State, and the decision goes beyond any case I have found in the books, and to establish the rule contended for by respondent in this case, would be to make a most dangerous precedent, and one that would lead to great inconvenience and be the prolific mother of fraud.

*B. S. Brooks,* for Respondent.

The title to one half the land it is not denied was in Fortune. Pierson could neither convey Fortune's title nor mortgage it. And neither a Court of law or of equity has any jurisdiction to transfer the title of Fortune to the plaintiff. It is only the law which the Court administers. *Jus dicere non jus dare.* The sole question is, therefore, does the law vest the title in the plaintiff? I do not think it would have been competent for the District Court to have inquired

or to have found that the plaintiff was a subsequent pur-
chaser in good faith, for value, without notice, in the absence
of all allegations of such facts, and in the teeth of his allega-
tion that he was not subsequent, but that Fortune was. (*Gif-
ford* v. *Carville*, 24 Cal. 589; *Bernal* v. *Gleim*, 33 Cal. 669.)

But, passing that question, we come to the question of
fact, was he a bona fide purchaser without notice? The
Court finds that he was not, and I think the evidence amply
justified the finding. The question is not, whether he is
bound to inquire for "possible equities," but whether, being
informed that Fortune has the legal title, the Court can sub-
ject it to the mortgage made by Pierson?

By the Court, NILES, J.:

It is conceded upon both sides that on the 20th of May,
1869, Fortune, the appellant, and Pierson, the mortgagor,
were tenants in common of the mortgaged premises, each
owning the undivided one half. Upon that day Pierson con-
veyed the entire premises to Fortune. Upon the 22d of
May, 1869, Fortune reconveyed to Pierson the undivided
one half of the premises. These conveyances were parts of
one transaction, and were intended to give to each of the
cotenants the benefit of all outstanding titles previously pur-
chased by the other, and did not otherwise affect their rela-
tive interests in the land. Neither of these conveyances
was recorded until after the execution of the mortgage in
suit.

In November, 1869, the defendant Pierson opened nego-
tiations with the plaintiff's testator, through his agent and
attorney, Taylor, to procure a loan of seven thousand dollars,
proffering a mortgage upon the premises as security. The
loan was subsequently made, and the mortgage in suit was
executed. Fortune was made a party defendant as one

claiming an interest in the mortgaged premises, which was averred in the complaint to be "subsequent to the lien of plaintiff's mortgage and subject thereto." He answered, averring his ownership of an undivided one half of the land, and denying that his interest was subject or subordinate to the lien of the mortgage.

The Court below found, among other facts, that "the plaintiff's testator had notice of defendant Fortune's rights at the time he lent the money to Pierson and took the mortgage mentioned in the complaint;" and the alleged error of the Court in this finding is the principal ground upon which a reversal of the judgment is asked.

We think the testimony is sufficient to support the finding. There was evidence tending to show that, pending the negotiations for the loan, Taylor, the agent of the plaintiff's testator, visited the premises and made inquiries of the tenant in possession as to its ownership, and was told by him that it was the land of Fortune, and that he held it for Fortune. Upon Taylor's suggestion that he "thought Mr. Pierson owned it also," he replied that they (Fortune and Pierson) substantially owned it together, and that they were partners in the land. Conceding that the mere possession of the tenant was not inconsistent with the sole ownership of the land by Pierson, still the declaration of the tenant that he held it for Fortune, and that Fortune was an owner, was sufficient to put Taylor upon inquiry as to Fortune's interest. And when we consider the additional fact that the conveyance from Fortune to Pierson was of a date long prior to the conversation referred to, and had remained unrecorded for more than six months at the time it was exhibited to the plaintiff's testator, we cannot avoid the conclusion that the exercise of ordinary diligence would require that further inquiry should be made of Fortune, whose residence was known, and who was easily accessible.

But it is urged by the appellant that, admitting the rights

of Fortune to be as claimed by him, the decree should have been for a sale of the entire mortgaged premises, but reserving those rights.    It is now too late to raise this question. The transcript does not set forth the decree, and therefore the alleged error is not apparent upon the judgment roll, and it could appear to us in no other way.    The case was evidently tried upon the theory that the rights of the parties were to be finally determined in this suit.

We are satisfied with the conclusions of the Court upon this point, and shall not go into the consideration of any technical question not distinctly made in the Court below, and which does not involve a substantial right.

Judgment and order affirmed.

Mr. Chief Justice WALLACE did not express an opinion.