Llewellyn Howell, Philip Howell, Margaret Mathias (née Howell), Urias Mathias, her husband, Adley C. Howell, Martha Howell, Samuel W. Howell and Francis L. Howell v. Thomas Mellon, W. L. Scott and the Youghiogheny River Coal Co., Appellants.

| 189 | 169 |
| 198 | 340 |
| 189 | 169 |
| 26 SC | 213 |

*Ejectment—Parol partition—Evidence.*

In an action of ejectment involving the question whether a parol partition has actually been made and executed, the judge does not sit as a chancellor, nor is it necessary that the partition be established by the measure of proof required to establish a parol sale.

In the second trial of the ejectment, the first trial of which was reported in Howell v. Mellon, 169 Pa. 138, the trial court followed carefully the lines pointed out in the opinion of the Supreme Court, and on an appeal from the judgment on a verdict in favor of the plaintiffs at the second trial, the judgment was affirmed.

*Evidence—Ancient transaction.*

The character of the evidence to prove a transaction sixty years ago differs from that which will be required to establish a recent transaction. There is not imposed on the party the impossible burden of producing the best evidence that could have been had sixty years ago, but only proving it by the best evidence that can be procured now. All that is necessary is that the weight of the evidence should produce conviction of the existence of the fact.

*Will—Conversion—Reconversion—Parol sale.*

Where testator makes provision for his wife during her life, and directs

a sale at latest by his executors at her death, the proceeds to be divided among his children, the will works a conversion of the land into personalty, and if after the death of the widow some of the children purchase the whole tract from the others by parol, and take possession of it with the intention of relinquishing the right to conversion by actual sale, and of holding it thereafter as land, that disposition of their purchase with that intention works a reconversion of the constructive personalty into land.

Argued Nov. 8, 1898. Appeal, No. 139, Oct. T., 1898, by defendants, from judgment of C. P. No. 2, Allegheny County, July T., 1891, No. 666, on judgment for plaintiffs. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment for a tract of coal land situate in Elizabeth township. Before SHAFER, J.

The facts appear by the report of the former trial of the case: Howell v. Mellon, 169 Pa. 138.

At the trial substantially the same evidence was produced as at the former trial.

Defendants' points and the answers thereto among others were as follows:

1. Under the pleadings and evidence the verdict should be for the defendants. *Answer:* Refused. [1]

2. Under the will of Llewellyn Howell, Sr., the legal title to the farm vested in John Howell, upon his appointment as administrator d. b. n. c. t. a., and John Howell's deed to Thomas Mellon was a good and valid execution to the power of sale and vested a valid title in fee in said Mellon to the property in controversy, and therefore the verdict should be for the defendants. *Answer:* Refused. [2]

3. Under the pleadings and evidence the verdict should be for the defendants, except. as to the undivided one-ninth interest of Llewellyn, Jr. *Answer:* Refused. [3]

5. In order to strike down the said deeds, under which the defendants claim, the plaintiffs must show by clear and convincing evidence that John, Philip and Llewellyn, Jr., bought out the interests of every one of their brothers and sisters in this farm; they must show the terms of the contract with each person, the price to be paid, and that the purchase price was actually paid. *Answer:* Refused. [4]

8. Even if the jury find from the evidence that John, Philip and Llewellyn did purchase and pay for the interests of all the other heirs, and also further find that they did make a valid parol partition, still if the jury believe from the evidence that Thomas Mellon, when he purchased this coal in 1863 from John Howell, exercised reasonable care and prudence, and made careful and diligent inquiry of the proper persons with respect to the title that he was buying, and that notwithstanding such inquiry he had no knowledge of the sales and parol partition now set up by the plaintiffs, but in good faith paid the purchase money mentioned in said deed, then he would be a bona fide purchaser for value, and without notice, and your verdict should be for defendants, except as to the undivided one-ninth interest of Llewellyn, Jr. *Answer :* Refused. [5]

Plaintiffs' points and the answers thereto among others were as follows :

5. And if the jury find from the evidence all the foregoing facts, then, as the defendants in this case expressly claim under John Howell, and under the said will of Llewellyn Howell, Sr., deceased, and the said will of Llewellyn Howell, Jr., deceased, it follows that the conveyances to John Howell from his brothers and sisters, made after the death of Llewellyn Howell, Jr., were inoperative to give title to the land in dispute to John Howell, as against the plaintiffs in this case ; John Howell had no valid title which he could convey to Thomas Mellon ; and no sufficient defense has been shown against a recovery by plaintiffs, and the verdict of the jury should be in favor of the plaintiffs, for the entire parcel of the coal land in dispute. *Answer :* Affirmed. [6]

8. In view of the terms of the will of Llewellyn Howell, Sr., admitted to probate and recorded on September 2, 1823, under which both parties claim, and of the will of Llewellyn Howell, Jr., admitted to probate and recorded on February 7, 1851, and of the proceedings upon the petition of Andrew Howell to the orphans' court of Allegheny county, at No. 128, October term, 1853, and especially of the answer of John Howell in said proceeding, the fact that Thomas Mellon, the grantee of John Howell, W. L. Scott, the grantee of Thomas Mellon, and the Youghiogheny Coal Company, the grantee of W. L. Scott, paid the purchase money in full, provided for in their respective

deeds, without knowledge or information of the claim of the plaintiffs in this case, is of no force in favor of the defendants. *Answer:* Affirmed. [7]

11. If the jury believe from the evidence that, in the lifetime of Llewellyn Howell, Jr., and after all the children of Llewellyn Howell, Sr., had become of age, Llewellyn Howell, Jr., John and Philip had bought out the interests of all their brothers and sisters in the proceeds of the land devised by their father, Llewellyn Howell, Sr., deceased, by his will, dated July 24, 1823, whether by contract made verbally or in writing; that, subsequently, with the assent of their mother, Llewellyn Howell, Jr., John and Philip elected to treat the land thereafter as land, and by a division line run on the ground, also with the assent of their mother, made a parol partition of the land between them, one purpart, embracing the coal land now in dispute, being allotted to Llewellyn Howell, Jr., and the other purpart being allotted to John and Philip Howell; that, in pursuance of said partition, Llewellyn Howell, Jr., of the one part, and John and Philip of the other, entered into possession of their respective purparts, and thereafter each made valuable improvements and exercised other acts of exclusive ownership over his or their own purpart, until the death of Llewellyn Howell, Jr., in 1851; that by the will of Llewellyn Howell, Jr., dated January 22, 1851, and duly admitted to probate, in evidence, the land in dispute, to wit: sixty-four and one half acres, more or less, being the one half of the land allotted to and taken by Llewellyn Howell, Jr., under said parol partition was devised to Andrew Howell for life, and on his death without issue to John Howell's children; and further, that after the death of said Llewellyn Howell, Jr., his devisee, Andrew Howell, died without issue, and that before the beginning of this suit, John Howell died, leaving the plaintiffs in this case as his children, then (if the jury find the foregoing facts), no sufficient defense has been shown against a recovery by the plaintiffs in this case, and the verdict of the jury should be in favor of the plaintiffs for the entire land in dispute. *Answer:* Affirmed, subjected to what I have said as to Llewellyn Howell, Third. [8]

The court charged in part as follows:

[In order to pass title to land or any real estate, a writing is

required, signed by the party, whose title is to pass; but as this right to get the proceeds of the sale of the land when it was sold, was not real estate, no writing was necessary to pass the interest or share in the proceeds, and that might be sold in the same manner as a man might sell any other sort of a claim he had against any one for money; that is, it might be sold by word of mouth.] [9]

[The law allows the heirs (and when I speak of heirs, I mean the distributees under such a will) to take the land instead of the proceeds of it, and dispense entirely with the sale. When they all do that, and take possession of the land, even without any writing to that effect, that becomes an effectual reconversion of this, which was formerly personal property, into real estate again, and gives them an interest in it proportionate to the interest they had in the proceeds.] [10]

[Now in this case there is some question as to how many children Llewellyn Howell, Sr., had at the time of his death. There is one child named Mary, who afterwards married a James Hindman, whose existence does not appear to have been known in the early stages of this case to the gentlemen connected with it, and the date of her death has not been fixed. There does not appear to be any tombstone over her grave by which it could be ascertained. It is admitted on both sides that the time of her death is not known nor whether or not she lived longer than Llewellyn Howell, Sr.] [11]

Now the first, and perhaps the most important matter in the case, is as to these alleged parol sales and parol partition. In respect to that I say to you that it is necessary for the plaintiffs to show to you satisfactorily, by the weight of the evidence, that these three brothers, John, Llewellyn and Philip, actually bought out all the other heirs, and then, having done so, made the partition. Now I cannot undertake to go over in detail the evidence upon which this rests. It has been detailed to you very carefully by counsel on both sides. Two deeds have been produced in evidence; one is a deed of Martha Armstrong and her husband, dated in 1835, to John, Llewellyn and Philip for her interest in the estate, and another is the deed of the same date, or about the same date at least, made by James Armstrong, who was the husband of Martha, and who had formerly been the husband of Sarah. You will recollect that two of these girls

married James Armstrong, one after the other, and as the law stood in those days, before the act of 1848, the husband was entitled to his wife's personal property, and her " choses in action " as they are called—her right ,to recover money from other people, if he chose to take them in his possession, and as far as these deeds are concerned, the Supreme Court has said that no reason has been shown for disregarding them in the other case, and there has been nothing shown in this case different from the other case in that respect; [therefore, I say to you that these deeds passed the title of Martha and of Sarah to John, Llewellyn and Philip, in this case.] [12]

. [When this case was tried before the statement was made to the jury that no direct evidence of a declaration of that woman or her husband, or of either of them, was given in evidence. Well, that is the case here.   We have nothing showing whether Mary Hindman sold to any of the plaintiffs or not; but it was said that at this length of time it might fairly be presumed that she or her husband had sold out, it being personal property; and that might be the case, or I would think it much more probable that if she lived longer than her father (which is quite doubtful), that she and her husband having died, all parties took it for granted that this property· went to the brothers and sisters.   I believe, as the law stood at that time, if it was personal property, it would have gone to the mother; but the probabilities are that they took it for granted it was real estate, and that it all went to the brothers and sisters, and no more atten-. tion was paid to it.] [13]

Verdict and judgment for plaintiffs.   Defendants appealed.

*Errors assigned* were (1–13) above instructions, quoting them; (14–29) rulings on evidence, similar to those reported in 169 Pa. 138.

*W. B. Rodgers*, with him *John O. Petty, Kennedy T. Friend* and *J. H. Beal*, for appellants.—The defendants are bona fide purchasers for value, and without notice, of the claim set up by the plaintiffs ; and therefore the plaintiffs were not entitled to recover: Bellas v. McCarty, 10 Watts, 13 ; Rhines v. Baird, 41 . Pa. 256 ; Joyce v. DeMoleyns, 2 Jones & La Touche, 374 ; Colyer v. Finch, 5 H. & L. 905 ; 2 Pomeroy's Eq. Jur. sec. 740·;

Meehan v. Williams, 48 Pa. 238; Peebles v. Reading, 8 S. & R. 496; Boggs v. Varner, 6 W. & S. 469; Kerns v. Swope, 2 Watts, 75; Wilson v. McCullough, 23 Pa. 440; Barnes v. Mc-Clinton, 3 P. & W. 67; Lower's App., 1 Walk. 404; Tolles's App., 110 Pa. 331.

By the will of Llewellyn Howell, Sr., the legal title to this land vested in his executor, and passed to John Howell when he was appointed administrator with the will annexed; and the deed from John Howell to Thomas Mellon was a good execution of the power of sale so vested in John, and passed an absolute legal title to Thomas Mellon and those claiming under him: Miller v. Meetch, 8 Pa. 417; Delafield v. Jackman, 85 Pa. 381; Evans v. Chew, 71 Pa. 51; Lantz v. Boyer, 81 Pa. 328; Silverthorn v. McKinster, 12 Pa. 67; Taylor v. Adams, 2 S. & R. 534; Blake v. Marnell, 2 Ball & Beatty, 38; Allison v. Kurtz, 2 Watts, 185; Bingham's App., 64 Pa. 345; Keefer v. Schwartz, 47 Pa. 503; Campbell v. Leach, 2 Ambler, 743; In re Morgan, 7 Ir. Ch. Rep. 18; Carver v. Richards, 27 Beav. 488; Warner v. Connecticut Mut. L. Ins., 109 U. S. 357; White v. Hicks, 33 N. Y. 383; Farlow v. Farlow, 34 Atl. Rep. 837; Wynkoop v. Wynkoop, 10 W. N. C. 65; Dick v. Harby, 48 S. C. 516; Wright v. Syracuse, etc., R. R. Co., 92 Hun, 32.

*Boyd Crumrine*, with him *J. P. Patterson* and *E. E. Crumrine*, for appellees.—Thomas Mellon and his grantees, the defendants in actual possession, stand in the shoes of John Howell, and if John Howell could not have defended on the evidence in this case, the present defendants cannot: Bassett v. Nosworthy, 2 White & Tudor's Leading Cases in Eq. (ed. 1877) 65–68; Reed v. Dickey, 2 W. 465; Chew v. Barnet, 11 S. & R. 392; Kramer v. Arthurs, 7 Pa. 171; Aldrich v. Bailey, 71 Pa. 246.

Upon several other grounds, upon our evidence, John Howell was conclusively estopped from setting up any title to the land in dispute, and by his estoppel the defendants here are bound: Miller v. Springer, 70 Pa. 269; Duffey v. Presb. Cong. 48 Pa. 46; Fulton v. Moore, 25 Pa. 476; Wise v. Rhodes, 84 Pa. 402; Cummings's Est., 153 Pa. 399; Spaulding v. Eimers, 3 Pittsb. Reps. 306; Greeley v. Thomas, 56 Pa. 35; Kelly v.

Eichman, 3 Wh. 419; Garber v. Doersom, 117 Pa. 162; Putnam v. Tyler, 117 Pa. 570; Miller's App., 84 Pa. 391; Root v. Crock, 7 Pa. 378; Seaton v. Barry, 4 W. & S. 183; Feather v. Strohoecker, 3 P. & W. 505.

The plaintiff's evidence was submissible, as well as sufficient, to establish the purchase of the interests, of the other children by Llewellyn, Jr., John and Philip, and the executed parol partition which gave to the plaintiffs the land in dispute through the will of Llewellyn, Jr.: Mellon v. Reed, 123 Pa. 1–18; Bucklin v. Davidson, 155 Pa. 366; Entriken v. Brown, 32 Pa. 364; Robinson v. Hodgson, 73 Pa. 202; Coxe v. Deringer, 78 Pa. 289; Jones v. Bland, 112 Pa. 176; Richards v. Elwell, 48 Pa. 361; Sterr's Est., 13 Phila. 239; McKnight v. Bell, 135 Pa. 358.

OPINION BY MR. JUSTICE DEAN, January 2, 1899:

When this case was brought here before by the same appellants (see 169 Pa. 138), it was reversed, because of what seemed to us a too strong leaning of the court below in favor of plaintiffs. The case had been very ably and carefully tried in that court, but the learned judge seemed to have assumed throughout his charge, that if the facts testified to by plaintiffs' witnesses existed, then plaintiffs were entitled to a verdict. We did not think the conclusion by any means necessarily followed. The jury might have come to such conclusion, but assuming the facts to be as claimed, we thought they might very well in view of defendants' evidence, have found the other way; and our Brother WILLIAMS, in the opinion, very concisely expressed our view at the close of it in these words: "The conclusion is not easily to be avoided, that the charge as a whole was calculated to lead the jury to a verdict in favor of the plaintiffs by the prominence it gave to the plaintiffs' case and by its failure to present the circumstances relied on by defendants as an answer thereto." The assignments of error in that case were thirty-six in number, in this one only twenty-nine, so that even in appellants' view there has been a somewhat nearer approach to justice at the second trial.

That plaintiffs might recover, it was necessary that they should establish by competent evidence to the satisfaction of the jury two propositions: 1. That about the year 1836, John Howell, the father of plaintiffs, with Philip and Llewellyn, two

of his brothers, purchased by parol the interests of their six brothers and sisters in the land devised to them and their mother by their father, Llewellyn Howell, Sr., the whole tract containing about two hundred and sixty acres. 2. That after so purchasing the three brothers made a parol partition of the land between them.

That the will of the ancestor, making provision for his widow during her life, and directing a sale, at latest by his executors at her death, the proceeds to be divided among his children, worked a conversion of the land into personalty, cannot, under our authorities, be questioned, and although not actually converted into money by a sale, from the date of the ancestor's death, as between the children who were to share in the money, it was personalty; and in bargaining concerning their respective interests, the law would only hold them to the observance of such formalities as was necessary in passing title to personalty, and if they did purchase by parol, then took possession of the whole tract as land with the intention of relinquishing the right to conversion by actual sale, and of holding it thereafter as land, that disposition of their purchase with that intention, worked a reconversion of the constructive personalty into land.

Assume as argued by appellant that the election to take as land that which the will directs shall be converted into money, must be by the consent of all the beneficiaries, and when the evidence on which such election rests consists of acts, these acts must be unequivocal, still we think there was evidence from which the jury was warranted in finding for the plaintiffs on the first proposition. It must be borne in mind that this transaction took place about sixty years ago, and necessarily the character of the evidence to prove it would differ from that which would be adduced to establish a recent one; there was not imposed on plaintiffs the impossible burden of producing the best evidence that could have been had then, but only that of proving a transaction of sixty years ago, by the best evidence that could be procured now; and it was their right to make out their case by any competent evidence, however desirable it may have been to have had more direct and positive testimony. All that was necessary was that the weight of the evidence should produce conviction of the existence of the fact. There was direct evidence in writing of release of two of the legatees to

Llewellyn, John and Philip; declarations of others and proceedings of record in the orphans' court showing that they had sold their interests to them; then the possession of the land by the three brothers thereafter, if not by any acts of open hostility, at least to the exclusion of the others, and no evidence of claim by the others. But the evidence to establish the parol partition between the brothers, also tends to establish the exclusive possession of the three brothers, and the conversion of the property into land. The partition averred is a division of the land into two nearly equal parts by a line running east and west, of which the north half was taken by Llewellyn, and the south half by John and Philip. There is evidence of a line having been adopted or run; fences erected in accordance with it; cultivation on their respective sides of the line; old stone corner indicating the course of the line; building of brick dwelling houses for the sons, Llewellyn and John; first, Llewellyn's was built on the northern half, and his initials were put on the house with the date; then John, contemplating marriage, built a brick house on his side of the line, and put on it his initials with the date, 1839; he did marry, and took up housekeeping in that house. We concede defendants' evidence bore strongly against plaintiffs' on both questions, but it did not conclusively rebut that of plaintiffs, and the court could not do other than submit the conflicting testimony to the jury under the careful instructions given. It was as clearly a case for them, as McKnight v. Bell, 135 Pa. 358, where it is decided that " in an action of ejectment involving the question whether a parol partition has actually been made and executed, the judge does not sit as a chancellor nor is it necessary that the partition be established by the measure of proof required to establish a parol sale."

Every point made by appellants either directly or indirectly avers error of the jury in finding these two facts against them. It is not necessary to exhaustively review all the numerous questions raised now but passed upon in the former case. The learned judge of the court below followed carefully the line pointed out in that opinion; he assumed nothing in favor of plaintiffs; if anything he leaned in favor of defendants. The finding of these two questions against appellants was fatal to their case; for if Llewellyn was the owner in severalty of the northern half, then his will devising the one undivided half

part thereof to his brother Andrew for life, and in case of his death without issue, to John's children, these plaintiffs, put in them the land in dispute.

Substantially the same assignments of error to the rulings on objections to plaintiffs' evidence were made in the former appeal, and were then practically overruled, for we said: "We do not say it (the evidence) should not have gone to the jury, but we do say that, if submitted to the jury, it should have been done with care, and with very definite instructions as to what it was necessary the jury should find in order to sustain the plaintiffs' title." The court below having followed these suggestions, the judgment should be affirmed, and it is affirmed accordingly.