[Civ. No. 988. Third Appellate District.—October 15, 1912.]

R. A. FRENCH, Appellant, v. JOSEPHINE A. PHELPS, Respondent.

VENDOR AND PURCHASER—TITLE OF VENDOR UNDER DISTRIBUTION—RIGHTS OF MINORS PURCHASED—ADJUDICATION OF SUFFICIENCY—TITLE NOT COLLATERALLY ASSAILABLE.—Where the vendor of land contracted to be sold to a purchaser, deraigns title under a decree of partial distribution of the estate of her deceased husband, which, in effect, adjudged the sufficiency of her title under the will, and included

therein the actual distribution of her title acquired by purchase and assignment of the interests of all the other heirs and legatees under the will, the title so deraigned is complete; and the purchaser is not justified in rejecting it on the ground that the interest of minors and incompetent persons acquired through their guardians were not legally acquired. The title so decreed by a court of competent jurisdiction, is not collaterally assailable.

ID.—JURISDICTION INCLUSIVE OF POWER TO MAKE ERRONEOUS RULINGS AND FINDINGS CORRECTIBLE ONLY ON APPEAL.—Where the court had acquired jurisdiction of the proceeding and of the subject matter thereof, the court had the legal power to make the decree as prayed for, and incidentally to make erroneous conclusions and findings, which if made, could have been corrected only on an appeal from the decree. Until so corrected, such errors cannot be made a menace to the validity of the decree, or its effect.

ID.—CONCLUSIVENESS OF DECREE OF DISTRIBUTION—IMMUNITY—EXCEPTION—RELIEF IN EQUITY.—A decree of distribution by a court having jurisdiction of the proceeding, if not appealed from, is conclusive upon all the heirs, legatees, or devisees, whose interests are involved in the proceeding thus adjudicated, and they cannot question its stability on the ground that the evidence upon which it was predicated was incompetent or insufficient to sustain the findings upon which it was produced. The decree, after it has become final, is immune from attack, except upon a showing in equity of fraud or some matter extrinsic to the matters or questions examined and determined.

ID.—PRESUMPTIONS—REGULARITY OF PROCEEDINGS—PROPER DECISIONS AT HEARING.—As to all matters, except the act of the executor or administrator in himself purchasing the property of the estate, the rule that all presumptions must be indulged favorable to the regularity of the proceedings leading to the judgment, and in support thereof, is to be applied with no less rigor to a decree of distribution than to any other kind of a judgment, and it is to be presumed that the evidence upon which the decree was predicated was in all respects sufficient and competent, and that any legal objections that could have been made against it were made by the party objecting to the granting of the petition and were decided by the court at the hearing.

ID.—EFFECT OF FORBIDDEN ACT OF EXECUTOR IN PURCHASING PROPERTY OF ESTATE—VOIDABLE NOT VOID ACT.—Though the act of purchasing the property of the estate by the executor or administrator thereof is expressly enjoined by section 1576 of the Code of Civil Procedure, yet it has been uniformly held in this state that the purchase of the property by such officer involves an act which is not void but only voidable by the parties whose interests are purchased.

ID.—SPECIAL PRESUMPTION—ADEQUACY OF CONSIDERATION FOR INTERESTS
OF BENEFICIARIES—ABSENCE OF CONTRARY SHOWING.—It must be
presumed that the price paid by defendant for the interests of the
other beneficiaries under the will, was adequate, fair, and just,
where there is no evidence in the record disclosing that the price paid
was inadequate, or that the beneficiaries on disposing of their inter-
ests were dissatisfied with their bargain, or had either appealed
therefrom or assailed it in equity after the time for appeal had ex-
pired, and nothing appears but the matters disclosed at the hearing
of the petition for distribution.

ID.—IMPREGNABLE DECREE OF TITLE IN RESPONDENT—CHIMERICAL SPECU-
LATION.—The time for an appeal from the decree having expired
prior to the time at which the transactions giving rise to this litiga-
tion took place, the title of the respondent to the property in con-
troversy stands confirmed, by a perfectly valid and impregnable
decree, against the stability of which nothing can be urged, but
a suggestion growing out of a mere chimerical speculation, that
at some future time, some one may challenge it on grounds presumed
to have been considered and passed upon by the court at the hearing
of the petition.

ID.—OBJECTION TO TITLE NOT APPEARING ON FACE OF RECORD—BURDEN
ON VENDEE.—Where the title to real property contracted to be sold,
is brought in question, and the defect therein or doubt as to the
soundness thereof does not appear upon the face of the record, but
depends upon some extrinsic fact, not discerned by the record, the
vendee must prove such fact to justify a refusal to accept the title
agreed to be purchased. He cannot justify his refusal to perform
his contract by a mere captious objection to the title tendered to him.
There must appear such a reasonable doubt as to the vendor's title
as affects its value, and would render the land unmarketable.

ID.—SUFFICIENCY OF TITLE OF VENDOR.—The record title which was ten-
dered by the vendor is legally sufficient, when it appears upon its
face "free from all litigation, palpable defects and grave doubts,"
and that it embraces both the legal and equitable titles, and the con-
veyance of which to the intending purchaser is accompanied with
such proof of title "as will arm him with the *recorded means* of
vindicating its validity in after times." It is sufficient, when upon
its face, a court of equity would not hesitate to decree a specific
performance of the contract of sale between the owner of the title
and the proposed purchaser.

ID.—QUESTION AS TO CONVERSION OF REAL PROPERTY INTO PERSONAL
DISCUSSED BUT NOT DECIDED—TENDER BY RESPONDENT OF PERFECT
TITLE—BREACH.—The question as to whether there was a conversion of
the realty into personal property is discussed, but not decided, it
being held that the decree of distribution confirmed in the respondent
a perfect title to the real estate involved in this controversy, and

that by the tender thereof, she fulfilled her part of the engagement, and that the vendee having refused to accept the conveyance so offered, was guilty of the breach of the contract of purchase.

APPEAL from a judgment of the Superior Court of San Mateo County. Geo. H. Buck, Judge.

The facts are stated in the opinion of the court.

Hillyer, Stringham & O'Brien, Robert L. Mann, and Charles N. Kirkbride, for Appellant.

Ross & Ross, and W. C. Sharpstein, for Respondent.

HART, J.—This is an appeal by the plaintiff from a judgment rendered and entered against him by the superior court of San Mateo County.

The action was instituted for the purpose of recovering judgment for the sum of $27,750, the major portion of which sum is for damages for the alleged breach of a contract for the sale of certain real estate, five thousand dollars of the balance representing the sum deposited, at the time of the execution of said contract, by the intending vendee, one George W. Phelps, as a payment on the purchase price, and two hundred and fifty dollars thereof for the expense incidental to the examination of the title to the property involved in the agreement and preparing the necessary papers.

It is alleged in the complaint that, prior to the commencement of the action, said George W. Phelps assigned the claim declared upon to the plaintiff.

The land affected by this controversy is situated in the county of San Mateo, and it appears that, on the seventeenth day of December, 1906, the defendant, by a writing, conferred upon the real estate firm of Filcher & Cox, having offices in Redwood City, in said county, the authority and right "to sell, and they are given exclusive sale for a period of sixty days from date hereof, and thereafter until such authority is withdrawn by me in writing, of the following described property," and then follows a description of the land, which embraces 180.88 acres. The agreement further provides that the land should be sold at a price which would net to the defendant the sum of $687.50 per acre, "or any

less sum agreed upon by me," and in consideration of the
services performed by Filcher & Cox for so negotiating the
sale, said firm was to receive as compensation "all they re-
ceive over the above-stated price, if said property is sold dur-
ing the life of this contract," etc.

Filcher & Cox were further authorized by the agreement
"to execute and deliver for me and in my name a contract
of sale of said property at the price agreed upon by me, and
to accept and hold a deposit on account of the purchase price
of said property," and it was stipulated upon the part of
the defendant that she would, upon the sale of said property
as indicated, convey the same, with a perfect title, free and
clear of encumbrances, to the purchaser. The agreement also
contains this provision: "If the title to said real estate is
imperfect, I am to be allowed thirty days from and after
notification to said Filcher & Cox of any defects therein, and
I agree within that time to make the title perfect if it can
be done, and if the judgment is that it cannot be done within
the time allowed, the deposit made to said Filcher & Cox
may be returned to the purchaser, unless the time to per-
fect the title is extended by mutual consent." The author-
ization further provided that, upon a sale being made, the
sum of twenty thousand dollars should be paid in cash, and
the balance to be made in deferred payments and secured by
a mortgage upon the land.

In pursuance of the authorization to dispose of said land
thus conferred upon them, Filcher & Cox, for the respondent,
and one George W. Phelps, as trustee, on the fifteenth day
of February, 1907, entered into a contract of sale, whereby
the former agreed to sell and the latter agreed to purchase
said land for the sum of $875 per acre, the payments to
be made as specified in the written engagement of Filcher &
Cox to negotiate and consummate the sale of said property.
Upon the execution of said contract, George W. Phelps, on
account of the cash payment of twenty thousand dollars re-
quired by the contract to be made, paid to and deposited with
Filcher & Cox the sum of five thousand dollars. This money
was turned over to the respondent.

The agreement of sale, substantially following the stipula-
tion in that respect embraced in the instrument conferring
upon Filcher & Cox the authority to sell the land, contained

the following provision with regard to the title to the property: "The vendee shall have a reasonable time to examine title to said property, but in no event shall said time exceed sixty (60) days from date. If, however, the title to said real estate is imperfect, the vendor shall be allowed thirty (30) days from and after notification by the vendee to the vendor or Filcher & Cox, her agents, of any defects, and the vendor ·agrees to make the title perfect if it can be done within that period, and if it cannot be so done, said deposit of five thousand dollars ($5,000.00) shall be returned to the vendee unless he shall extend the time to perfect the title or shall consent to waive said defects."

It appears that George W. Phelps (not related to the respondent) in the proposed purchase of the land, represented a syndicate, which appears to have been organized for the special purpose of buying the property and of which he, Filcher & Cox and some others were members.

The respondent, in due course, tendered a deed to the land to the vendee named in the contract of sale, and the latter refused to accept said instrument or the title purporting to be conveyed thereby for the asserted reason that it did not, and that the respondent could not, for certain reasons to be hereafter examined, convey a perfect title to the property.

In order that the objections to the title thus interposed by the proposed vendee may be clearly understood, the facts from which crystallized the source of the respondent's title to the property involved in this controversy should now be given.

The respondent deraigns her title through alleged conveyances from certain legatees or devisees under the will of her deceased husband, Timothy Guy Phelps, who died testate in the county of San Mateo, on the eleventh day of June, 1899, leaving a valuable estate situated in said county, and consisting, among other kinds of property, of some 2,900 acres of land and a number of blocks in the town of Redwood City, said conveyances having been in effect adjudged sufficient in all respects to transfer the interests of said legatees by a decree of partial distribution of said estate.

The will of the deceased contains the following provisions:

"After paying all my just debts and liabilities, including my funeral expenses, I will and bequeath unto my wife,

Josephine Amelia Phelps, the sum of $50,000.00 and one-half of all my estate, real, personal and mixed, etc., over and above said sum of $50,000.00.

"And I will and bequeath to my sister Phoebe W. Daughaday and Frances L. Witter, and their heirs, and the heirs of my deceased brothers, Alexander Dean Phelps and Mark Gale Phelps, and the heirs of my deceased sisters, Elizabeth Bentley and Permelia Harris, one-half of the surplus or remainder of my estate, over and above the said $50,000.00; one share to Phoebe W. Daughaday, one share to Frances L. Witter; one share to the heirs of Alexander Dean Phelps, and one share to the heirs of Elizabeth Bentley; and one share to the heirs of Permelia Harris;

"I will to the heirs of my deceased brothers and sisters the amounts to which said brothers and sisters would have been entitled had they been alive, under distribution of the one-half of my estate over $50,000.00, and without reference to the number of heirs either of them may have left;

"In order that I may be clearly understood, I repeat; I will to my wife, Josephine Amelia Phelps;

"First.    $50,000.00 and

"Second.    The one-half of my estate over $50,000.00, and the other persons named, the remaining one-half above that amount."

Said will named the widow (respondent) as executrix thereof, to act as such without the necessity of giving a bond for that purpose, and by due proceedings the instrument was admitted to probate and letters testamentary granted and issued to her.

Some six years after the proof of the will and the appointment and qualification of the respondent as executrix, the latter purchased the entire interests of all the other beneficiaries under said will, and, on May 9, 1905, after due proceedings, the superior court of the county of San Mateo entered its decree of partial distribution of said estate, the effect of which was to vest in the respondent the title of all the other legatees or beneficiaries named and referred to in the last will of the deceased to all their interests in said estate.

The petition for said partial distribution alleged, among other things, that the petitioner "has purchased of and from

all of the heirs and devisees mentioned in said last will
and testament all of their right, title, and interest in and
to all of the real and personal property mentioned and de-
scribed'' in the will and in the instruments conveying said
interests, and the decree, after setting forth that certain ob-
jections were filed against the petition, declares that "the
court proceeded with the hearing on said petition and objec-
tions. And evidence having been introduced and heard and
said matter and objections having been submitted to the court
for decision, the court finds that all the allegations of said
petition are true." The property involved here was accord-
ingly distributed to the respondent, the objections to the peti-
tion not having been sustained.

It appears that some of the legatees or beneficiaries, whose
interests the respondent thus acquired, resided in other states,
and that some were minors and one mentally incompetent,
and that the conveyances transferring their respective inter-
ests to the respondent were executed, in most of the instances,
by and through their attorneys-in-fact, exercising their au-
thority as such, and to so execute conveyances, under powers
of attorney, executed by said legatees. In the case of Eliza-
beth Carpenter, an insane legatee, the conveyance was by
Joseph Leggett, guardian of her estate, and for and in the
names of Arthur and Natalie Phelps, minors, the conveyance
was by Willis G. Witter, appointed attorney-in-fact by the
"mother and natural guardian" of said minors, residing in
the state of Texas.

The alleged defects in the title to the land specified and
urged by the vendee are based upon the absence from the
abstract of title of the proceedings culminating in the ap-
pointment of guardians of the estates of Elizabeth Carpen-
ter, incompetent, and Arthur and Natalie Phelps, minors,
and upon the alleged insufficiency of certain powers of at-
torney to confer authority upon the attorneys-in-fact therein
named to execute deeds or conveyances of real property.
The respondent was notified by the intending vendee of the
alleged defects so specified in the title to the property, but,
nevertheless, as seen, tendered her deed to the vendee, insist-
ing that the title, notwithstanding the alleged defects pointed
out by the vendee, was perfect.

The vital question presented here is: Did the respondent tender to the vendee named in the contract of sale a deed conveying both a legal and equitable title "free from all litigation, palpable defects and grave doubts?" (*Sheehy* v. *Miles,* 93 Cal. 288, 292, [28 Pac. 1046]; *Lawton* v. *Gordon,* 37 Cal. 202, 206; *Bauer* v. *Pierson,* 46 Cal. 293.) Or, to put the question in the language employed in *Crim* v. *Umbsen,* 155 Cal. 697–703, [132 Am. St. Rep. 127, 103 Pac. 178, 180], Did the respondent tender to the vendee a conveyance with such proof of title "as will arm him with the recorded means of vindicating its validity in after times?" (See *Calhoun* v. *Belden,* 66 Ky. (3 Bush,) 674.)

The rule as stated in the above interrogatories must be conceded to involve the test determinative of the proposition whether, in a particular case, a party to an executory contract for the sale of real estate as an intending vendee will be legally justified in rescinding or repudiating such contract upon the ground that the vendor is unable to convey a complete or perfect title to the property. And we think that, in the case at bar, the conveyance tendered to the party named as vendee in the contract of sale fully measured up to the requirements as to title prescribed by such test, and that consequently the findings and judgment must be upheld.

It is not claimed that the decree is void upon its face, but the contention is that certain of the evidence upon which the court predicated said decree discloses imperfections in the title of respondent acquired through the decree. It is, in other words, claimed, as we have already shown, that certain powers of attorney did not confer upon the attorneys-in-fact therein named the power or authority to execute conveyances of real estate, and that the abstract of title fails to show the proceedings of the superior court in the matter of the guardianship of two minors and an incompetent, the deeds conveying the interests of said minors and incompetent in the estate of the deceased to the respondent having been executed by the guardians. (It seems that the record of the guardianship proceedings was destroyed by the great fire in San Francisco in April, 1906.) Thus it will be observed that the objections thus urged against the respondent's title necessarily involve in effect an attack, collateral in its nature, upon the decree. It is very clear that the objections to the title, which

has been adjudged by a decree or judgment of a court having jurisdiction of the proceeding and the subject matter thereof to be in the respondent, would not be heard in a proceeding collateral to that culminating in the making of the decree, and we think the objections urged under the circumstances revealed here afford no legal excuse for the refusal of the vendee to carry out his part of the agreement of sale. Indeed, it is our opinion that the decree of distribution confirmed in the respondent a perfect title to the property.

Section 1908 of the Code of Civil Procedure provides that in case of a judgment or order against a specific thing, or in respect of a will, or the administration of the estate of a decedent, the judgment or order is conclusive upon the title to the thing, the will, or the administration.

Section 1678 of the same code provides: "Partition or distribution of the estate may be made as provided in this chapter, although some of the original heirs, legatees, or devisees may have conveyed their shares to other persons, and such shares must be assigned to the person holding the same, in the same manner as they otherwise would have been to such heirs, legatees, or devisees."

As seen, the petition for a partial distribution of the estate, including the property concerned here, alleged that the petitioner "has purchased of and from all of the heirs and devisees mentioned in said last will and testament all their right, title, and interest in and to all of the real and personal property belonging to said estate . . . and that all of said heirs have by their instruments in writing conveyed to and invested in her all of their right and interest in all of the property, real and personal, mentioned and described," etc.

Upon the filing of said petition due notice was given directing "all persons then and there to appear and show cause, if any they have, why the said partial distribution of said estate as prayed for in said petition should not be granted." Upon the date designated in the notice, the court made its decree that "due notice of the hearing of said petition has been given in all respects as required by section 1659 Code of Civil Procedure, and as required by law," and "that all the real property described be and the same is hereby distributed

to said Josephine A. Phelps . . . upon the filing of a bond,''
etc.

Having thus acquired jurisdiction of the proceeding and
the subject matter thereof, the court had the legal power to
make the decree as prayed for, and, incidentally, to make
erroneous rulings and findings which, if made, could have
been corrected only on an appeal from the decree. And until
so corrected, they cannot otherwise be made available as a
menace to the validity of the decree or its effect. In other
words, the decree, as to the title to the interests so distributed,
is conclusive upon all the heirs, legatees, or devisees whose
interests were involved in the proceeding thus adjudicated
(Code Civ. Proc., secs. 1666 and 1908; *Estate of Vaughn*, 92
Cal. 192, [28 Pac. 221]; *Estate of Burton*, 93 Cal. 459, [29
Pac. 36]; *De Castro* v. *Berry*, 18 Cal. 96, 98, 99; *Kearney* v.
*Kearney*, 72 Cal. 591, [15 Pac. 769]), and they cannot now
question its stability upon the ground that the evidence upon
which it was predicated was incompetent or insufficient to sus-
tain the findings from which it was deduced. Indeed, the
decree is perfectly immune from attack by the parties whose
interests were the subject of the adjudication therein and
thereby made except upon some fraud or other sufficient matter
collateral or extrinsic to the questions examined in the proceed-
ing leading to the decree, and, therefore, even in a direct
attack, if it could be shown that the testimony was altogether
insufficient to support the decree, or that it was the result
of forged documents or perjured testimony, all the parties
interested having had their day in court in the proceeding
in which the decree was made, it certainly could not be suc-
cessfully challenged for any of these reasons. (*Pico* v. *Cohn*,
91 Cal. 129, [25 Am. St. Rep. 159, 13 L. R. A. 336, 25 Pac.
970, 27 Pac. 537], and cases therein cited; *Mulcahy* v. *Dow*,
131 Cal. 73, [63 Pac. 158]; *Sohler* v. *Sohler*, 135 Cal. 323,
328, [87 Am. St. Rep. 98, 67 Pac. 282].)

In *Mulcahy* v. *Dow*, 131 Cal. 73, [63 Pac. 158], the rule
as it is approved by all the cases in this state is thus stated:
''A proceeding for the distribution of an estate of a deceased
person is a proceeding *in rem;* and the decree of distribution
binds all who have constructive notice thereof, and if not ap-
pealed from, is conclusive as to the whole world upon all ques-
tions of heirship.''

It follows that the only way in which the effect of the decree here challenged may be disturbed is by the introduction, through an appropriate proceeding, of some issue of fact sufficient in itself to justify a court of equity in taking cognizance of the matter and making an inquiry into the justness of the decree independently of any of the issues of fact necessarily included in the adjudication leading to the making of said decree. In other words, to justify any interference with the result flowing from the decree it would be necessary to charge and prove in a proceeding having that purpose in view some fraud collateral or extrinsic to the matters or questions examined and determined in the proceeding culminating in the decree—that is, some fact or facts not only sufficient to start the machinery of a court of equity but which were not necessarily or presumptively included in the inquiry resulting in the making of the decree of distribution. As to all matters, except the act of the executor or administrator in himself purchasing the property of the estate, the rule that all presumptions must be indulged favorably to the regularity of the proceedings leading to the rendering of a judgment and in support thereof, is to be applied with no less rigor to a decree of distribution than to any other kind of a judgment, and it is, therefore, to be presumed that the evidence upon which the decree was predicated was in all respects sufficient and competent, and that any legal objections that could have been made against it were made by the party objecting to the granting of the petition and decided by the court at the hearing. It must be presumed that the question of the adequacy of the consideration, upon which proposition much emphasis is laid by appellant, was considered and passed upon by the court, and that the price paid for the interests of the beneficiaries was adequate, fair, and just. It is true that the act of purchasing property of the estate by the executor or administrator thereof is expressly enjoined by section 1576 of the Code of Civil Procedure, but it has been uniformly held by the supreme court that the purchase of such property by such officer involves an act which is not void but only voidable. (*Estate of Richards,* 154 Cal. 478, 483, 484, [98 Pac. 528]; *Boyd* v. *Blankman,* 29 Cal. 20, [87 Am. Dec. 146]; *O'Connor* v. *Flynn,* 57 Cal. 293; *Burris* v. *Kennedy,* 108 Cal. 341, [41 Pac. 458].)

If, then, the decree cannot be attacked upon any matter which necessarily or presumptively must have been considered and determined on the hearing of the petition—that is to say, if, as is obviously true, the evidence upon which the decree was founded cannot be reviewed in a proceeding to vacate the decree, what tangible ground is apparent from anything presented or disclosed here for an assault upon the decree upon some question of fraud extrinsic to questions examined in the proceeding through which the decree was given existence? The conveyances, as shown, constitute a part of the evidence upon which the court acted, and they are, therefore, not subject to reconsideration in another proceeding attacking the decree. We can perceive no substantial, or, indeed, any ground upon which the decree can be successfully attacked, and the suggestion that the minors or the incompetent may, upon becoming *sui juris,* set up some sort of plea that the decree was brought about in fraud of their just rights is too remote even to cast a visible shadow of a suspicion upon the soundness of the title sustained by the decree.

But, conceding that the evidence upon which the court acted in making the decree could properly be considered in determining whether the title of the defendant thus adjudicated to be in her is perfect or otherwise, it is to be remarked that there is nothing in this record supporting the specific objections of the vendee to said title. There is absolutely no evidence in this record disclosing that the consideration for which the other beneficiaries under the will of Timothy Guy Phelps parted with their interests in the estate of the deceased was inadequate. This proposition, as before suggested, comes solely from the suggestions of appellant himself. Nor is there any evidence here that the beneficiaries so disposing of their interests are dissatisfied with their bargain or that they have threatened to attack the decree or manifested any intention of attempting to destroy its effect by some proceeding in a court of equity based, as it must be if sustainable at all, upon matters of fraud which were not involved in the issues presented by the petition or which did not arise at the hearing thereof, or, as before declared, that they have any ground for so attacking it. In brief, there is nothing shown here except those matters which must have been disclosed at the hearing of the petition.

20 Cal. App.—8

It follows, from the views herein expressed, that, the time for an appeal from the decree having expired prior to the time at which the transactions giving rise to this litigation took place, the title of the respondent to the property in controversy stands confirmed by a perfectly valid and, indeed, an impregnable decree, against the stability of which nothing has been or can be urged but a suggestion, growing out of mere chimerical speculation, and involving an objection which might as reasonably be urged against any judgment, perfectly valid on its face, that at some future time some one may challenge it on some of the grounds urged against it here, the reasons for which, it must be presumed, were considered and passed upon by the court at the hearing of the petition.

The rule, where the title to real property is brought into question, is that if the defect therein or a doubt as to the soundness thereof is disclosed on its face—that is, on the face of the record title—the vendee need go no further, but if, as here, it depends upon some extrinsic fact not discovered by the record, he must prove this fact to justify a refusal to accept the title. (*Greenblatt* v. *Hermann,* 144 N. Y. 13, [38 N. E. 966].) In *Phillips* v. *Day*, 82 Cal. 24, 31, 32, [22 Pac. 976], where a vendee sought to escape the consequences of his contract to purchase land on the ground that a certain portion thereof had, previously to the making of the agreement, been dedicated to the purpose of a public street, the court approvingly quotes the following from *Hellreigel* v. *Manning*, 97 N. Y. 59: "A purchaser cannot justify his refusal to perform his contract by a mere captious objection to the title tendered him; nor is it sufficient for him, when the jurisdiction of an equity court is invoked to compel him to perform his contract, merely to raise a doubt as to the vendor's title. Before he can successfully resist performance of his contract on the ground of defect of title, there must be at least a reasonable doubt as to the vendor's title, such as affects its value, and would interfere with its sale to a reasonable purchaser, and thus render the land unmarketable."

In *Sohler* v. *Sohler*, 135 Cal. 323, 328, [87 Am. St. Rep. 98, 67 Pac. 282], the court speaks thus: "The title conferred by a decree of distribution, after regular proceedings in probate, has always been justly recognized as a title of *high and unimpeachable* value, because of the nature of the pro-

ceedings and of the exclusive jurisdiction which has been vested in the probate court to pass upon the questions involved. If such a decree may at any time be vacated in equity, it must result that no title any longer stands secure.''

While the defendant's title was not directly acquired from or through the decree itself, it was judicially confirmed thereby upon evidence presumptively sufficient to sustain it.

Our conclusion is that the record title of the respondent to the property involved in this dispute fully measures up to the test heretofore referred to as having been formulated by the courts—that is to say, that it is, upon its face, ''free from all litigation, palpable defects and grave doubts,'' and that it embraces both the legal and equitable titles. Or, as the test is otherwise put, the respondent's title having been confirmed by an unimpeachable decree or judgment of a court of competent jurisdiction, said court having legally acquired jurisdiction to make it, the conveyance tendered by the respondent to the intending purchaser was accompanied by such proof of title ''as will arm him with the *recorded means* of vindicating its validity in after times.'' We think, in other words, that, there being no possible objection to respondent's title, upon its face, a court of equity would not hesitate to decree a specific performance of the contract of sale between the owner of that title and the proposed purchaser.

We perceive nothing in any of the cases cited and relied on by counsel for the appellant militating against or conflicting with the foregoing views. We shall not take the time to review them in this opinion, but we are satisfied that they are easily to be differentiated from this case.

Counsel for respondent present another view of this case which, if sound, furnishes a complete answer to some of the objections to the title raised by the appellant, viz.: That the language of the will of the deceased, properly construed, discloses that it was the intention of the testator that his estate should be sold and that the respective interests of the beneficiaries named in the instrument should be distributed to them in the form of money. If this be true and no particular or definite time in the future is fixed by the will for the sale of the real property—that is, if the power to sell is not postponed to some future definite time or is not made to depend upon some future event or contingency—then, it is contended,

these propositions follow: 1. That the will itself has, *ipso facto, et eo instanti,* upon the death of the testator, worked a conversion of the real property into personalty—that is to say, the real property is then to be deemed personal property from the time of the testator's death, and the beneficiaries are, therefore, to be regarded as legatees rather than as devisees, and the provision for them considered as a bequest of money. (Civ. Code, sec. 1338; *Estate of Walkerly,* 108 Cal. 652, [49 Am. St. Rep. 97, 41 Pac. 772]; *Bank of Ukiah* v. *Rice,* 143 Cal. 265, 270, [101 Am. St. Rep. 118, 76 Pac. 1020]; *Rankin* v. *Rankin,* 36 Ill. 293, [87 Am. Dec. 205]; *Gray* v. *Smith,* 3 Watts, (Pa.) 289.) 2. That conceding that the instruments by which the other beneficiaries of the estate conveyed their interests were insufficient for any reason to pass real property, they are, nevertheless, sufficient in all respects as transfers by assignment of the personalty, although in form conveyances of real property. (*Howell* v. *Mellon,* 189 Pa. St. 169, 177, [42 Atl. 6]; *Snover* v. *Squire* (N. J.), 24 Atl. 365; *Walker* v. *Killian,* 62 S. C. 482, [40 S. E. 887]; *Thornton* v. *Mulquinne,* 12 Iowa, 549, [79 Am. Dec. 548]; *Williams* v. *Emberson,* 22 Tex. Civ. 522, [55 S. W. 595].) 3. That the interests of all the beneficiaries having been merged or united in the respondent, it was within her right to take the property in its original form (*Bank of Ukiah* v. *Rice,* 143 Cal. 265, [101 Am. St. Rep. 118, 76 Pac. 1020]; *Greenland* v. *Waddell,* 116 N. Y. 234, [15 Am. St. Rep. 400, 22 N. E. 367]), and that her petition to have the estate distributed to her in its original form constituted an election on her part to take the property in that form and worked a reconversion. (*Estate of Pforr,* 144 Cal. 121, 129, [77 Pac. 825]; *Burr* v. *Sim,* 1 Whart. (Pa.) 252, [29 Am. Dec. 48].)

We think that there is much force in the contention that the language of the testament here is quite clearly indicative of an intention that the estate should be sold and that the proceeds of such sale should constitute a fund from which the interests of the several beneficiaries should be gratified, and, manifestly, if that contention be tenable, the legal propositions following therefrom, as above stated, are undoubtedly sound.

But we do not conceive it to be necessary to examine this feature of the argument.  We are satisfied with the other view of the case, that the decree of partial distribution confirmed in the respondent a perfect title to the real estate involved in this controversy, and that she tendered and offered to convey to the intending purchaser named in the agreement of sale such a title.  She, therefore, fully fulfilled her part of the engagement, while, on the other hand, the vendee, having refused to accept the conveyance so offered, was guilty of a breach of the agreement to which he obligated himself.

In other words and in brief, our conclusion is that the challenged findings are sustained by the evidence and that the judgment cannot, therefore, justly be disturbed.

The judgment is, accordingly, affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 14, 1912.