## IN RE HAWGOOD'S ESTATE.

### (159 N. W. 117.)

(File Nos. 3994-3996. Opinion filed September 9, 1916. Rehearing denied January 6, 1917.)

1. **Executors and Administrators—Claim Against Estate—Limitations—Face of Claim, Whether Conclusive—Duty of Executor.**
   Under Prob. Code, Sec. 177, providing that no claim must

be allowed by executor or by the judge which is barred by limitations, held, that this section relates to the question of fact as to whether the claim is barred, which facts the executor or judge should ascertain and therefrom determine whether the claim presented is barred, the statute not relating to what may appear from the face of the claim.

2. Same—Claim Against Estate—Verification, as Part of Claim— Interest, Sufficiency of Verification as to.

The verification of oath of claimant to a claim against an estate constitutes part of the claim. Held, further, that a verification which refers to an account "amounting to · * * * , besides interest," is sufficient to cover both principal and interest.

3. Same—Final Distribution, How Made, Where Partial Distribution Void.

Final distribution of estates under probate should be made the same as if no partial distributions had been made, where orders or decrees in partial distribution were void.

4. Same—Petition for Legacy, Order For—Bond as Jurisdictional Condition—Statute.

Under Prob. Code, Sec. 302, authorizing a legatee, at any time after four months from issuance of letters testamentary, to petition for the legacy to which he is entitled, to be given him upon his giving bond with security for payment of his proportion of the debts, and Sec. 305, providing that if it appears that the share of the party applying may be allowed to him without loss to creditors of the estate, the court "must" make an order requiring him, before receiving his share, to execute a bond to executors, the giving of the bond is a jurisdictional condition precedent to making of an order for partial distribution.

5. Same — Partial Distribution — Jurisdictional Condition — Estate "But Little Indebted," Statute—Judicial Notice of Debts and Expenses—Abatement of Legacies—Unauthorized Partial Distribution—Final, and Partial, Orders, Distinguished—Conclusiveness.

Under said provisions of Secs. 302 and 305, Prob. Code, and the further condition of Sec. 305, that it be shown that the estate is but little indebted, and Sec. 308, providing that an order or decree of final distribution is conclusive as against the rights of heirs, legatees, etc., subject only to be reversed, set aside, or modified on appeal, the showing that the estate is but little indebted is a jurisdictional condition precedent; and where petition for partial distribution showed on its face that the debts would amount to $10,000, and the court had judicial notice that there would be costs and expenses of administration which, taken in connection with debts, would

amount to approximately one-half of the entire amount of the estate, and the will disclosed that the entire estate was disposed of by legacies of different classes to different persons, and that in order to pay debts, costs and expenses of administration there must be abatement of some legacies, the county court was without jurisdiction to order partial distribution, and such order is void. **Held**, further, that the provisions in Sec. 308, requiring the court to name the persons and the proportions or parts to which each shall be entitled, and providing that such persons may demand, sue for and recover their respective shares, etc., exclude the idea that orders or decrees in partial distribution are conclusive.

6. **Wills—Construction—"General," or "Specific," Legacy?—Statute Construed**

Under Civ. Code, Sec. 1071, defining a specific legacy as the legacy of a particular thing, specified and distinguished from all other things of the same kind belonging to the testator, defining demonstrative legacies, annuities, and residuary legacies, and declaring all other legacies to be general legacies, held, that where a testator left household goods, a $1000 certificate of deposit, $772.02 in money deposited in bank, $193 in cash, and mining property consisting of real and personal property used in connection therewith, and bequeathed to his wife "all my household goods and personal property whatever, except my right, title and interest in * * * my mines and mining property," the certificate of deposit, money in bank, and cash, constituted a general legacy; that a legacy is general when it is not answered by any particular portion thereof, or article belonging to the estate, the delivery of which alone will fulfill the intent of the testator; that a bequest of personalty in gross or in bulk, which will include any personalty generally, is a general, not a specific, legacy; and that the wife took a specific legacy of the household goods, and a general legacy of all personal property whatever, exclusive of the mining property.

7. **Wills—Equitable Conversion Under—Creation of Fund—Directing Sale—Statute.**

A clause of a will directing the sale of a residue of the estate, consisting of mines and mining property and other personalty used in connection therewith, constituted an equitable conversion thereof into money, within the express provision of Civ. Code, Sec. 1057, and created a fund.

8. **Same—Construction of Bequest of Proceeds of Sale—"Demonstrative Legacy"—Statute—Joint, Not Separate, Legacy.**

Where a will directed that the residue of testator's property, consisting of mines and mining property and other personalty used in connection therewith, be sold by executors, and "one-

third of the proceeds of the sale * * * be given to my wife, and the sum of" $10,00 be given to each of four certain nieces and nephews, "and one thousand dollars" to his wife's sister and her daughter, and directed the remaining amount to be equally divided between his four sisters, held, that the bequest to the wife was, under Civ. Code, Sec. 1071, a demonstrative legacy; that the bequests to the nieces and nephews, although containing no express direction that they be paid from any particular fund, constitute, when considered in the close connection in which this clause stands to the different classes of this portion of the will, demonstrative legacies; and that the joint bequest to the wife's sister and her daughter was a legacy to them jointly, or $500 each, and not a separate legacy of $1000 to each.

9. **Wills—Construction—"Residuary Legacy"—Payment from Fund, Effect.**

Under a clause of a will directing that, after payment of certain demonstrative legacies, etc., out of proceeds of sale of devised property therein directed to be made, the amount remaining should be divided equally between testator's four named sisters, held, that the clause constituted a residuary legacy to each of the four sisters, notwithstanding the fact that they might be payable out of the remainder of the fund created by the other clause directing such sale; construing Civ. Code, Sec. 1071, subd. 4, defining a residuary legacy as one embracing only that which remains after all bequests of a will are discharged.

10. **Wills—No Appropriation for Debts, No Undisposed-of Property—Abatement from Legacies, to Pay Debts, Statutory Rules for—"Abatement"—"Specifically."**

Where there was no property of a decedent appropriated by will for payment of debts, and no property not disposed of by the will, and testator gave his wife a specific legacy of the household goods and a general legacy of all personalty other than certain mining property, which he ordered to be sold, with directions that his wife, and each of his four nieces and nephews, receive a demonstrative legacy from the proceeds, and a legacy to his wife's sister and her daughter, that might have been paid out of such proceeds, and gave the residue equally to his four sisters, and the executors received from all sources $24,348, of which amount $22,383 was the proceeds of the mining property, which after payment of debts, administration expenses, etc., left a net estate of $11,181, to meet the aggregate gross legacies of $24,348, held, that, under Civ. Code, Secs. 1071-1077, declaratory of the common-law rule as to legacies, and by Sec. 1073, declaring that the property expressly appropriated by will for payment of debts shall be

first resorted to, then property not disposed of by will, property devised to residuary legatees, property not-specifically devised, and then all other property ratably, and that no debts shall be paid until after provision for expenses of administration, etc., and by Sec. 1076 providing that an abatement shall take place in any class only as between the legacies of that class, there must be "abatement," which is the reduction or substraction from a legacy to pay debts; that, there being nothing in the estate from which to pay debts other than legacies, resort must be had, under said section, first, to the residuary legacies, next to general legacies ratably, and, if necessary, to specific and demonstrative legacies ratably—demonstrative legacies, under the circumstances of this case, being classified as specific, the word "specifically," used in subd. 4 of Sec. 1073, comprehending demonstrative legacies when the fund exists at testator's death from which they are to be paid, as well as other specific legacies; that on abatement different classes of legacies do not prorate between each other, but each class in its order must be exhausted before abatement can take place in the next higher class; and that the legacies given to minors were subject to the same rule as to abatement, as that applying to adults.

11.　**Executors and Administrators—Demonstrative Legacy, Overpayment of—Liability of Executors.**

Where a joint demonstrative legacy of $1000 to testator's wife's sister and her daughter has been wrongfully and unlawfully overpaid by more than $1000, the amount of such overpayment should be treated as still being in the hands of the executors, to be accounted for by them.

12.　**Same—Distribution—Executor's Use of Cash Funds—Liability for Principal and Interest—Interest and Profit on Legacies Wrongfully Paid, Liability for.**

Where executors had been in possession of cash funds of an estate amounting to $24,348, for more than seven years, they should be charged such amount, together with all interest and profit, if any, they may have received therefrom, and with interest on all sums theretofore wrongfully paid out or advanced on account of legacies under the will.

Appeal from Circuit Court, Lawrence County. HON. JAMES McNENNEY, Judge.

In the matter of the estate of John N. Hawgood, deceased. From an order for final distribution, the widow and the executors separately appealed; certain legatees cross-appealing. Certain legatees who moved in the county court, on hearing of petition for final distribution, to open the question of allowance of the

widow's account, and for other relief, having succeeded there, and, upon appeal of the widow and executors from the order of the county court to the circuit court, the latter court having found an item of said account was barred, said moving legatees appeal from the order entered upon said finding. Order affirmed. Judgment—being the order or decree for final distribution—reversed, and cause remanded, with instructions.

*George M. Martin,* for Appellant widow.

*Eben W. Martin,* and *Norman T. Mason,* for Appellants executors.

*W. G. Rice,* for Respondents and Cross-Appellants.

(1) To point one of the opinion, Appellants, Executors, and Appellant, Jennie N. Hawgood, Legatee cited: Rev. Prob. Code, Sec. 171; 18 Cyc. 480; Landis v. Woodman, 58 Pac. 587 (Cal.)

(2) To point two of the opinion, Cross-Appellants and Respondents cited: Prob. Code, Sec. 171; Aguerre v. Packard, 14 Cal. 172; Etchas v. Orena, 60 Pac. 45.

(4) To point four of the opinion, Appellants, Executors, and Appellant, Jennie N. Hawgood, Legatee, cited: Richelson v. Marriette, 149 N. W. 553.

Cross-Appellants and Respondents, cited: Prob. Code, Sec. 302, 305, 306; Richelson v. Mariette, 149 N. W. 553.

(5) To point five in the opinion, Appellants, Executors, and Appellant, Jennie H. Hawgood, Legatee, cited: 18 Cyc. pp. 663-4-5; William Co. v. Lawler, 48 Pac. 323 (Cal.); Crew v. Pratt, 51 Pac. 38 (Cal.); Wills v. Wills, 137 Pac. 249 (Cal.); Greenwood v. Murray, 2 N. W. 945 (Minn.); French v. Phelps, 128 Pac. 772 (Cal.); Murphy's Estate, 78 Pac. 961 (Cal.)

Cross-Appellants and Respondents, cited: In re Willey's Estate, 73 Pac. 998; In re Rose's Estate, 22 Pac. 86; Code Civ. Proc. Sec. 336, subd. 1; Sec. 1499; Prob. Code, Sec. 177; Lichtenberg v. McGlynn, 105 Cal. 45, 38 Pac. 541; McGrath v. Carroll, 110 Cal. 79, 42 Pac. 466; Eachas v. Orena, 60 Pac. 45; Mumford v. Rood, 153 N. W. 921.

(6) To point six of the opinion, Appellants, Executors, and Appellant, Jennie N. Hawgood, cited: 3 Pomeroy's Eq. Jur. Sec. 1131; 3 Pom. Eq. Jur. Sec. 1130, page 2207, and note pp. 2207-8; Note 11 L. R. A. (N. S.) p. 79; Rock v. Zimmerman, 25 S. D.

237, 126 N. W. 266; A bequest of 20-21sts of the proceeds of the sale of the testator's real estate is specific; Weed v. Hoge, 83 Atl. 636. (Conn.); Hamilton v. Hamilton, 134 New York Sup. 645; Tomlison v. Bury, 14 N. E. 137 (Mass.)

Cross Appellants and Respondents, cited: Civ. Code, Sec. 1071; 40 Cyc. 1877; Kelley v. Richardson, 13 So. 785, (Ala.); In re Woodworth, 31 Cal. 595; Kearns v. Kearns, 77 N. J. Eq. 453 (76 Atl. 1042.)

(7) To point seven of the opinion, Cross-Appellants and Respondents, cited: Civ. Code, Sec. 1057; Spencer v. Lyman, 131 N. W. 802.

(8) To point eight of the opinion, Appellants, Executors, and Appellant, Jennie N. Hawgood, Legatee, cited: Rev. Civ. Code, Sec. 1071, Subd. 2.

Cross-Appellants and Respondents, cited: Civ. Code, Sec. 1071, subd. 2; 40 Cyc. 1870, 1871; Graham v. Graham, 45 N. C. 291; Harrison v. Denny, 113 Md. 509, 77 Atl. 837; Nusly v. Curtis, 36 Col. 464, 85 Pac. 846.

(11) To point eleven of the opinion, Appellants, Executors, and Appellant, Jennie N. Hawgood, Legatee, cited: 18 Cyc. 632; Cowie v. Strohmeyer, 136 N. W. 978, (Wis.); Ernst v. Freeman, 88 N. W. 636, (Mich.).

(12) To point twelve of the opinion, Appellants, Executors, and Appellant, Jennie N. Hawgood, Legatee, cited: Rev. Civ. Code, Secs. 1082, 1083.

McCOY, J. One John N. Hawgood died testate on the 6th day of September, 1908, leaving a will by which he disposed of his entire estate by legacies. In October, 1908, the will was admitted to probate in Lawrence county. Estate administration proceedings were had in the county court, property sold under the provisions of the will and orders of the court, creditors' claim filed and allowed, executors' reports and accounts filed and approved, and two partial decrees of distribution entered, and payments made thereunder by the executors. No final distribution has ever been made, although the executors have filed a petition, and for approval a report on final distribution, and a hearing had thereon, and an order for final distribution has been made, from which three separate appeals have been taken.

The wife of decedent, who was one of the executors, filed against the estate the following claim:

Estate of John N. Hawgood, in Account with Mrs. Jennie Hawgood, Debtor.

| | | | |
|---|---|---|---|
| To cash | February, 1902 | .............................. | $2,060 |
| " | " June, 1903 | .............................. | 1,500 |
| " | " March, 1904 | .............................. | 500 |
| " | " November, 1906 | .............................. | 1,000 |
| " | " December, 1907 | .............................. | 500 |
| | | | $5,560 |

This account was verified as follows:

"Mrs. Jennie Hawgood, being sworn, says that the annexed account, amounting to $5,560.00, besides interest, is justly due her from the estate of John N. Hawgood, deceased, * * *" etc.

This account or claim was allowed in full, with interest; such principal and interest amounting in the whole to $7,668.32, and which was ordered by the first decree of partial distribution to be paid to Mrs. Hawgood. On the hearing of the petition for final distribution, certain of the legatees under the will moved the court to open the question of the allowance of said account, and that the first item thereof, of $2,060, and all interest, be stricken therefrom and disallowed, on the ground that on the face of the account this first item was barred by the statute of limitations, and that no interest was claimed in the account itself, and by reason thereof the claim should have been allowed in no greater sum than $3,500. It is the contention of these moving legatees that, under section 177, Probate Code, providing that "no claim must be allowed by the executor or administrator, or by the judge, which is barred by the statute of limitations," it was error to allow such item of said claim. The county court sustained this motion. The circuit court found that as a matter of fact the said item of said claim was not barred. From this finding the moving legatees have appealed.

[1, 2] We are of the view that the evidence sustains the finding that during a portion of the limitation period the decedent was absent from this state, which tolled the statute. We are of the view that this section 177 relates to the question of fact as to whether the claim is barred, rather than to what may appear

from the *face* of the claim; that the executor or administrator or judge should ascertain the facts, and from them determine whether or not the claim presented is barred by the statute of limitations. We are also of the view that the vertification or oath of the claimant constitutes a part of the claim, and that the verification claiming interest on the account is sufficient. Therefore we are of the view that this claim, principal and interest, was properly allowed.

By two orders of partial distribution, one dated March 15, 1909, and one August, 1910, the said Jennie Hawgood was paid, as partial distribution, by the executors, two items, one for $1,000, and one for $7,631.68. On the hearing for final distribution certain legatees moved the court that said $1,000 item and said $7,631.68 item be disallowed, for the reason that it appeared from the face of the said account and upon the records and proceedings that said sums were not debts against said estate, nor paid during the course of administration, but were payments made on partial distribution to Jennie Hawgood, and could only be considered by the court on final distribution. This motion was granted in the county court. The present appellants, Jennie Hawgood and the executors, appealed therefrom to the circuit court.

It appears from the record that these two items, amounting to $8,631.68, were composed of $1,965.02, claimed by Jennie Hawgood as a specific legacy under paragraph 3 of the will, and $6,666.66 as a specific or demonstrative legacy under the fourth paragraph of the will. The circuit court found that the decrees in partial distribution were invalid as to two minor legatees, in that they were entered upon a misrepresentation in the petition in regard to the $1,965.02, the same being a general and not a specific legacy; that six other legacies, of $1,000 each, were demonstrative legacies; that sufficient of said $1,965.02 be returned to the estate by Jennie Hawgood and the executors to enable them to pay to the said two minor legatees $1,000 each and interest; that certain cash on hand, otherwise belonging to Jennie Hawgood, be distributed among certain demonstrative legatees, other than Mrs. Hawgood. An order for final distribution was entered in accordance with these findings, from which Mrs. Hawgood and the executors have separately appealed, and from which certain of the other legatees have also appealed.

Mrs. Hawgood and the executors assign as error the conclu-sion of the trial court that the decrees in partial distribution were not conclusive upon all parties interested, on the ground that the evidence showed there was no material misrepresentation of a fraudulent character, and that there was no misrepresenta-tion of extrinsic or collateral matter which would justify the set-ting aside of such decrees; that the court erred in finding that the bequest to Mrs. Hawgood of all testator's personal property was a general and not a specific legacy, and that the six legacies. of $1,000 each were demonstrative legacies; that the court erred. in requiring the executors to refund to the estate certain moneys. theretofore paid out by them under the orders of the county court; and that the court erred in ordering certain distribution to, demonstrative legatees. The other appealing legatees assign as. error the conclusion that certain moneys be returned to the estate, and the refusal of the court to make certain proposed findings of fact and conclusions of law in regard to matters of final distribution.

[3] It will be entirely impracticable, and will serve no useful. purpose, to specifically consider all the separate assignments of error. The real matter in contention between the appealing and responding parties interested, as raised by the various assign-ments of error, grows out of the force and effect to be given to the decrees of partial distribution, and the interpretation and. construction to be given to certain provisions of the will, and what final distribution should be made. We are of the view that final distribution should be made in this case the same as. if no partial distributions had ever been made, for the reason that said orders or decrees made in partial distribution of the estate were wholly unauthorized and void.

[4] By section 302, Probate Code, a legatee may, at any time after the lapse of four months from the issuing of letters testamentary, present a petition for the legacy to which he is en-titled to be given to him upon his giving a bond with security for the payment of his proportion of the debts. It is clear from a reading of this section that the giving of the bond is a jurisdic-tional condition precedent to the making of an order for partial distribution. The supreme importance and necessity of the statu-tory requirement for the giving of such bond as a precedent.

condition to partial distribution cannot be better illustrated than the fact of this case present. Here the whole contention arises over whose legacy shall be abated to pay debts. Such a bond, under the circumstances of this case, would protect the legacies from being wrongfully used to pay debts. Section 305 says that:

"If at the hearing it appears that * * * the share of the party applying may be allowed to him without loss to the creditors of the estate, the court *must* make an order * * * requiring [the] legatee * * * obtaining such order, before receiving his share, or any portion thereof, to execute and deliver to the executor * * * a bond."

This section also clearly indicates that the giving of the bond is a jurisdictional condition precedent to the allowance of any partial distribution; the language of this section is that the court *must* make an order requiring the bond before partial distribution takes place. The court was incompetent to make any valid order of distribution without first requiring this bond to be given.

[5] This section 305 also provides another condition precedent, and that is a showing that the estate is but little indebted. The first petition for partial distribution on its face showed that the debts, with interest thereon, would amount approximately to $10,000, and the court had judicial notice that there would be costs and expense of administration which, taken in connection with debts, would amount to approximately one-half the amount of the entire estate. At the time these petitions for final distribution were under consideration, the county court had before it the will, which disclosed that the entire estate was disposed of by legacies of different classes to different persons, and that in order to pay debts and costs and expenses of administration there must of necessity be abatement of some one's legacies. Under these circumstances we are of the view that the county court was not authorized—was wholly incompetent and without jurisdiction— to order partial distribution. Sections 1658-1661, Code Civ. Proc. Cal., are substantially the same as sections 302-306 of the Probate Code of this state. In construing these sections of the California Code in the case of In re Hale's Estate, 121 Cal. 125, 53 Pac. 429, being a case where it appeared on the application for partial distribution that the estate was of the value of $462,000, with

an admitted indebtedness of $250,000, the Supreme Court of that state said:

"These sections authorize an order of partial distribution only in the event that 'it appears that the estate is but little indebted, and that the share of the party applying may be allowed to him without loss to the creditors of the estate.' * * * Without the existence of these facts, the court cannot competently make such an order, even in the absence of opposition thereto. * * * The contemplation of the statute is that, unless these facts exist, there is no right to partial distribution, no matter what the condition of the estate may be in other respects. Neither the probative findings of the court nor the evidence in the case sustain the finding as to the existence of these jurisdictional facts. * * * The case was therefore not one in which the court was authorized to dispense with the requirement of a bond."

It will be observed that we have no provision in our Code authorizing the county court in certain cases to dispense with the bond, as is provided for by section 1663 of the California Code. The provision of our section 305 is that the court *must* make an order requiring the bond before distribution can be made. We are therefore of the view that any order made by the county court without this peremptory and mandatory requirement is void. While it is apparent from our statute that the county court, under certain conditions, has jurisdiction to decree or order partial distribution, yet it is incompetent and not authorized to exercise such jurisdiction unless the existence of certain jurisdictional facts first appear. The record before the county court, at the time the said decrees or orders for partial distribution were made, conclusively showed that the jurisdictional facts, necessary to authorize partial distribution, did not exist. Hence we are of the view that the requirements of our sections 302 and 305 as to the existence of jurisdictional facts are mandatory, and that any order made in partial distribution of an estate, without the existence of such jurisdictional facts, is wholly void. Richelson v. Mariette, 34 S. D. 573, 149 N. W. 553. A reading of section 308, Probate Code, sustains this view. This section relates to the order on *final* distribution and provides:

"In the order or decree, the court must name the persons and the proportions or parts to which each shall be entitled, and

such persons may demand, sue for and recover their respective shares from the executor or administrator, or any person having the same in possession. Such order or decree is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal."

The language of this section, under well-known rules of statutory construction, excludes the idea that orders or decrees in partial distribution are so conclusive. From the fact that sections 302 and 305 require a bond for that protection of certain persons, implies that the matter disposed of on partial distribution are not final, but are subject to readjustment on final distribution. It is by decree on final distribution, provided for by section 308, that the court is especially and expressly authorized to determine and designate the share to which each distributee is entitled, and the legatee is given the right by this section to maintain suit against the executors and others to recover such share. We do not hold that there might not be cases where the matters disposed of by the order for partial distribution might not be conclusive as against the parties interested; but such cases could only occur when the jurisdictional facts were first shown to exist that would authorize the court to order partial distribution, and would not apply to a void order where such jurisdictional facts were shown not to exist. French v. Phelps, 20 Cal. App. 101, 128 Pac. 772.

[6] The appellants contend that the bequest to Mrs. Hawgood of all the testator's personal property was a specific and not a general legacy, and that the six $1,000 legacies are general and not demonstrative legacies. This contention necessarily requires interpretation and construction of certain portions of the will. At the time of his death the testator possessed household goods, a $1,000 certificate of deposit, $772.02 in money on deposit in a bank, $193 in cash, and certain mining property, consisting of real and personal property used in connection therewith, all of which, excluding the household goods, was of the value of $24,-348.28. Subdivision 3 of the will is as follows:

"I give and devise to my wife Jennie Turner Hawgood all my household goods and personal property whatever, except my right, title and interest in and to my mines and mining property."

It is the contention of appellants that this provision of the will gave to Mrs. Hawgood a specific legacy of the $1,000 certificate of deposit, and the money on deposit in the bank and the $193 in cash, all amounting to $1,965.02. We are of the view that this part of the will gave to Mrs. Hawgood a specific legacy of the household goods and a general legacy of all personal property, whatever the same might have been, exclusive of mining property, which at the time of testator's death as a matter of fact turned out to be and was the said $1,965.02 as represented by said certificate of deposit and money, but would have included any other general personal property of which the testator might chance to have died possessed, whether it might have been this money or a horse. In Kearns v. Kearns, 77 N. J. Eq. 453, 76 Atl. 1042, 140 Am. St. Rep. 575, and note, a bequest of "my household goods, cash on hand or in bank, life insurance, and all other personal property of every description," was held to be a specific legacy as to the household goods, cash, and insurance; but it was held, as to "all other personal property of every description," to be a general legacy. In Kelley v. Richardson, 100 Ala. 584, 13 South. 785, it was held that a bequest to my sister Mahala of "all my personal property, except a certain stock of goods. accounts and fixtures in a certain store," was a general legacy to the sister. In re Woodworth's Estate, 31 Cal. 595, a bequest of "all my personal property" was held to be a general legacy.

It seems to be generally held that a bequest of personal property in gross or in bulk, which will include any personal property generally, is a general and not a specific legacy. A specific legacy is defined by section 1071, Civil Code, to be "a legacy of a particular thing, specified and distinguished from all others of the same class." A bequest of "all my personal property whatever," except certain specified kinds, does not relate to a particular thing that can be specified and distinguished from all other things constituting the class and that might be included within the term "personal property." A legacy is said to be general when it is not answered by any particular portion thereof, or article belonging to the estate, the delivery of which alone will fulfill the intent of the testator. If the testator in the case at bar had perchanced to die seised of horses or cattle, the same could have passed to this legatee under the words "my personal property whatever," as

well as could the certificate of deposit and money in the bank. Therefore we are of the opinion that the certificate of deposit and money in the bank and cash, amounting to $1,965.02, was a general legacy, and not specific. Kearns v. Kearns, supra, note thereto, 140 Am. St. Rep. 603; Tifft v. Porter, 8 N. Y. 516; Smith v. McKitterick, 51 Iowa, 548, 2 N. W. 390; Davis v. Close, 104 Iowa, 261, 73 N. W. 600.

[7, 10] Subdivision 4 of the will is as follows:

"I will and direct that all the rest, residue and remainder of my property, consisting of mines and mining property and other personal property used in connection therewith, be sold by my executors and one-third of the proceeds of the sale of such property be given to my said wife and the sum of one thousand dollars be given to each of my following nieces and nephews: Edna Scott, Alice Scott, Florence Scott and Marshall Scott, and one thousand dollars be given to my wife's sister, Florence Jewett and her daughter Margaret Jewett; and further after the payment of the foregoing legacies the amount remaining in the hands of my executors shall be divided equally between my four sisters."

This subdivision 4 is divisible into five clauses, the first of which directs the sale of the mining property, which constituted an equitable conversion thereof into money. Section 1057, Civil Code; Spencer v. Lyman, 27 S. D. 471, 131 N. W. 802. This equitable conversion created a fund, and the second clause of this subdivision directs that one-third of such fund, "the proceeds of the sale of such property," be given to the wife. This constitutes a demonstrative legacy to the wife. Section 1071, Civil Code, provides that a legacy is demonstrative when the particular fund is pointed out from which it is to be paid. 40 Cyc. 1870.

The third clause of this fourth subdivision is "and the sum of one thousand dollars be given to each of my following nieces and nephews," naming them. This clause constitutes a separate and distinct bequest to the four nieces and nephew named, and while there is no express direction in this clause of the will that these four legacies of $1,000 each be paid from any particular fund, still, considering the close connection of the different clauses of his subdivision, and especially the first clause creating the fund from the sale of the mining property, and the apparent intent as to the disposition thereof, the intention of the testator appears

from the wording of this will to have been that these legacies to the nieces and nephew, under this third clause, should also be paid from this fund, and we therefore hold the same to be demonstrative legacies.

The fourth clause of this fourth subdivision of the will is "and one thousand dollars be given to my wife's sister, Florence Jewett and her daughter Margaret Jewett." This clause clearly gives $1,000 to these two legatees jointly, or $500 each, and not a separate legacy of $1,000 to each. This joint legacy of $1,000 is also a demonstrative legacy for the same reason as the legacies to the nieces and nephew given by the third clause.

The fifth and last clause of the fourth subdivision is as follows:

"After the payment of the foregoing legacies the amount remaining in the hands of my executors shall be divided equally between my four sisters," naming them.

This clause clearly constitutes a residuary legacy to each of the four sisters, notwithstanding the fact that they might be payable out of the remainder of the fund created by the first clause of this subdivision 4 of the will. Subdivision 4 of section 1071, Civil Code, defines a residuary legacy as one which embraces only that which remains after all the bequests of the will are discharged. This last clause of the fourth subdivision of this will falls expressly within the definition of the statute defining a residuary legacy. Residuary legacies are placed in a class by themselves, by reason of the fact that the amount of such legacies, payable to the legatee, is of a fluctuating nature, and may chance to be large or small in comparison with specific legacies created by the same will, dependent upon the size of the fund from which they are made payable, at the time of the testator's death. There is nothing in the record in this case to indicate that the testator, at the time he executed his said will, had any knowledge as to the amount his said mining property would produce upon a sale thereof by his executors, and at the time of the execution of his will he was not disposing of a certain and then definite sum of money that constituted the fund from which the legacies, created by the fourth subdivision of this will, were payable.

There are, however, cases holding that, although a legacy in fact be a residuum, still it is not a residuary legacy within the

meaning of that term, where the testator was dealing with and disposing of a fund, the amount of which was then certain and definite, as where the testator disposed of the proceeds of a certain policy of insurance, amounting to the certain sum of $1,000, to five sons, as follows: $200 to my son John, $200 to my son James, $200 to my son Charles, $200 to my son Samuel, and the remaining $200 of said $1,000 policy to my son William. In such case the $200 to the son William, although a residue, was held to be a demonstrative and not a residuary legacy, on the specific ground that the testator was disposing of a certain definite sum or fund. One of the leading cases on this proposition is Page v. Leapingwell, 18 Ves. 463, 34 Eng. Reprint, 392. Also see Van Nest v. Van Nest, 43 N. J. Eq. 126, 13 Atl. 179. In this line of decisions the amount of the fund was certain and the amount of the residue was certain; but in cases where it was a matter of chance or uncertainty, at the time of the making of the will, as to what amount of the fund and the amount of the residuum would be, it seems to be uniformly held that the legacy of such a residue is a residuary legacy purely. Darden v. Hatcher, 1 Cold. (41 Tenn.) 513; Anderson v. Anderson, 31 N. J. Eq. 560.

The Tennessee case, in its circumstances applicable to the question of residuary legacy, is very similar to the case at bar. The will considered in that case directed the sale of certain lands, and then made three demonstrative bequests of certain portions of the proceeds of such sale; and then the will contained the following provision:

"The remainder of the money from the sale of the land, if any, to be divided equally between my two nieces," naming them.

It was held that this clause of the will created purely residuray legacies. In rendering the opinion the court said:

"It seems that where a particular fund is given in parcels, and upon a deficiency of assets it becomes necessary to resort to it for the payment of debts, the principle is, in general, that if the person to whom the last fractional part * * * is given be appointed to take it, as the residue or remainder of the specific fund, then he, as residuary legatee, will only be entitled to the surplus of the fund, after full satisfaction of the other aliquot parts of it specifically bequeathed; and in the character of residuary legatee

he cannot call upon the particular legatees of fractional parts of the specified fund to abate, since, if there had been an excess of the funds, he, as residuary legatee, would have been entitled to it. So, if there be a deficiency, it is only equitable that his share should be less in that proportion * * * There can be no doubt as to the residuary nature of the bequest of the surplus of the fund. Three several bequests of fractional parts of this particular fund, each for a specific sum, are previously made, two of them to testator's nieces, * * * and then the 'remainder' of the fund, if any there should be, which was obviously doubtful in testator's mind, is given equally to the same two nieces. This is, beyond all question, a residuary bequest; and, being so, it is first liable to be applied to the discharge of the debts of the estate."

[10] The appellants and cross-appellants assign as error the distribution made by the trial court, and which assignments present the question as to what distribution under the will should be made of the estate after the payment of all debts and expenses of administration. There came into the hands of the executors from all sources the sum of $24,348.28. This total sum was composed of $22,383.26, the proceeds of the sale by the executors of the mining property directed to be sold by the fourth subdivision of the will, the $1,965.02 the certificate of deposit and money, and a small amount from various other sources. This total estate was entirely disposed of by legacies. There are three kinds of classes of legacies involved in this distribution, viz., demonstrative, general, and residuary; the specific legacy of household goods not being involved in the issues on this appeal. The total face or primary value of all these money legacies, entirely leaving out of consideration the question of any indebtedness, was as follows:

One demonstrative legacy to the wife, being one-third
    of the proceed of the sale of the mining property. .$ 7,461.08
Four demonstrative legacies to the nieces and nephew. .  4,000.00
One demonstrative joint legacy to Mrs. Jewett and
    daughter ................................  1,000.00
One general legacy of wife under part 3 of will........  1,965.02
Residuary legacies to four sisters.....................  9,922.18

    Total gross legacies equaling total gross assets.....$24,348.28

The total debts, costs, and expense of administration, as shown by the record, is $13,166.76, leaving a net estate to be distributed of $11,181.52. There was no property appropriated by this will for the payment of debts, and no property not disposed of by the will. It necessarily follows that there must be abatement of legacies for the payment of debts. Abatement is defined to be reduction or subtraction from a legacy to pay debts. 3 Pom. Eq. Jur. § 1136; 40 Cyc. 1899. The question then arises in this case as to whose legacies must abate to pay the debts and costs of administration. There being nothing in this estate from which to pay debts other than legacies, under section 1073, Civil Code, resort must be had to the legacies in the following order: (1) To residuary legacies; (2) to general legacies ratably; (3) if necessary, to specific and demonstrative legacies ratably—demonstrative legacies, under circumstances of this case, being classified as specific. 3 Pom. Eq. Jur. § 1138, lays down the rule that, if the fund out of which a demonstrative legacy is payable exists as a part of the testator's estate at his death, demonstrative legacies are governed by the same rules as specific legacies, and abate only with them ratably, but, if the fund does not exist, that the otherwise demonstrative legacy becomes and is a general legacy, and abates in the class with general legacies. In this case the fund from which the demonstrative legacies were directed to be paid is in existence and constitutes the larger part of the estate. 40 Cyc. 1870-1910; Schouler on Wills and Administration, p. 521, notes 4 and 5; Schouler on Wills, §§ 1461a and 1490; Jarman on Wills, p. 1071; O'Day v. O'Day, 193 Mo. 62, 91 S. W. 921, 4 L. R. A. (N. S.) 922, and note; Stilphen's Case, 100 Me. 146, 60 Atl. 888, 4 Ann. Cas. 158, and note.

We are of the view that the word "specially," as used in subdivision 4 of section 1073, Civ. Code, which says, 'property which is not specifically devised or bequeathed," comprehends demonstrative legacies, when the fund exists at testator's death from which they are to be paid, as well as any other specific legacies; that under such circumstances a demonstrative legacy is specific, of a specifically bequeathed legacy, and not subject to abatement in the class with general legacies. Sections 1071 to 1077 are declaratory—of the common-law rule as to legacies. Section 1076, is declaratory of the common-law rule that on abatement

different classes of legacies do not prorate between each other, but each class in its order must be exhausted before abatement can take place at all in the next higher class. The primary amount of the residuary legacies to the four sisters of $9,922.18, being less than the amount of the total debts and expense, will be entirely exhausted, and still leave a balance of the indebtedness of $3,244.58. Resort must next be had to the $1,965.02, the general legacy to the wife, still leaving an unpaid balance of debts of $1,279.56 to be paid by the demonstrative legacies ratably.

It appears from the record that one of the nieces and the nephew to whom bequests were made were minors until recently, and that the trial court required the executors to pay their legacies in full, with interest. We are aware of no rule of law, under the view we have taken of this case, that would exempt the legacies of these minors from abatement for the payment of debts. In that respect their legacies are subject to the same rule as legacies of an adult.

[12] It also appears that the joint demonstrative legacy of $1,000 to Mrs. Jewett and daughter has been overpaid by more than $1,000 in some wrongful manner not authorized by law, and the amount of this overpayment should be treated as still being in the hands of the executors, to be accounted for by them.

[13] It appears that the executors have had possession of the cash funds of this estate for something over seven years. The executors should be charged with the full amount of $24,348.28 received by them, together with all interest and profit, if any, they may have received therefrom. They should also be charged with interest on all sums of money heretofore paid out or advanced on account of legacies under said will, and the total net sum still remaining of all receipts after the payment of all debts and expenses should be divided pro rata among all the said demonstrative legatees.

The judgment appealed from is reversed, and the case remanded to the circuit court, with directions to enter judgment in harmony with this decision, but without costs to any party. This decision applies to each and all of the three appeals taken in this case.

POLLEY, P. J., took no part in this decision.