## COURTNEY et al. v. DANIEL et al.

No. 15529—Opinion Filed March 2, 1926.

Rehearing Denied March 8, 1927.

### 1. Wills—Probate—Issues Triable.

In a proceeding to probate a will, the only issue triable is the factum of the will, or devisavit vel non. In such proceeding, the county court cannot construe the will nor determine the rights of pretermitted children.

### 2. Judgment — Jurisdiction to Vacate — Fraud.

The district court has power to vacate and annul orders and judgments of other courts in a proceeding brought for that purpose for fraud of the parties, inducing and entering into such order, where fraud is extraneous to the issues involved in the proceeding attacked. One species of such extraneous fraud is that which prevents the other party from having a fair opportunity to present his case, and it is immaterial, when a judgment is attacked on this ground, whether the attack is denominated a direct or collateral attack.

### 3. Wills—District Court May Construe.

In an action in the district court in partition and within the rule last above, attacking an order of the county court purporting to construe a will which is admitted to probate, the district court has the incidental jurisdiction to construe the will and determine the rights of pretermitted children.

### 4. Executors and Administrators—Bond for Legacy Jurisdictional.

Under section 1354, et seq. C. O. S. 1921. providing that an heir, devisee or legatee may obtain a legacy or share in an estate to which he is entitled, on giving bond with security for payment of his share of the debts, the giving of such bond is jurisdictional, since there is no statute in this state authorizing the court to dispense with such bond. An order made accordingly, without the giving of such bond, is void.

### 5. Courts—Co-ordinate Jurisdiction — First Acquired—Exclusive.

Where the district court under the foregoing rules, acquires jurisdiction of the parties and subject-matter pending in such county court, its jurisdiction is exclusive of the jurisdiction of the county court to render any subsequent orders involving the same subject-matter and issues, since the court which first acquires jurisdiction retains the same, and may not be interfered with by such other court of co-ordinate jurisdiction.

### 6. Wills—Pretermitted Children—Intention to Omit, How Determined.

Formal wills being required to be in writing, the intention of the testator to omit his children who are not mentioned in the will, must be determined from the language of the will itself, aided by attendant circumstances excluding evidence of oral declarations by the testator at variance with or in amplification of the language of his written testament.

### 7. Same—Declarations of Testator—Inadmissible.

Under the last paragraph, if the declarations of the testator are in corroboration or amplification of the will, they are immaterial; if in derogation thereof, they are incompetent.

### 8. Same—Declarations of Third Person as to Advancements Inadmissible.

Under section 11313, C. O. S. 1921, providing that all gifts are advancements, if so expressed in the gift or grant, or charged as such by the decedent, the testimony of a third person that certain gifts by decedent were advancements is incompetent.

### 9. Deeds—Acknowledgment — Impeachment—Proof.

The evidence to impeach the certificate of acknowledgment of the deed in this case is clear, cogent, and convincing, and such as produces a conviction amounting to a moral certainty that the certificate is false.

### 10. Judgment Sustained.

The judgment is not against the clear weight of the evidence, and is affirmed.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Ottawa County; Charles C. Smith, Judge.

Action by Opal Daniel et al. against Ann E. Courtney et al. Judgment for plaintiffs, and defendants appeal. Affirmed.

J. B. Dudley, Reuben M. Roddie, O. F. Mason, Q. P. McGhee, and N. C. Barry, for plaintiffs in error.

Shannon & Shannon and Burford. Miley, Hoffman & Burford, for defendants in error.

Opinion by ESTES, C. In 1919, John L. Courtney executed his will in favor of his wife, in which he made no mention of any of his children or grandchildren. He died

April 12, 1920. After providing for the payment of his debts, the will provides:

"All the rest and residue of my property, real and personal, of every kind and whereever situated, whether vested or contingent at the time of my death, I devise and bequeath to my beloved wife, Ann E. Courtney, absolutely, free and clear of any condition or restriction whatever."

Ann E. Courtney, his wife, sole beneficiary, was nominated as executrix. On April 12, 1922, four of his children, as plaintiffs, instituted this action in the district court of Ottawa county against the other child and four grandchildren, taking by right of representation, and the widow mother, plaintiff in error, Ann E. Courtney, and Q. P. McGhee and Frank R. Burns, attorneys, and certain other defendants, raising the issue of their omission from said will, and praying partition in the aliquot parts set out, etc. On September 5, 1923, they filed their amended petition.

In their first cause of action, they alleged that said will had been admitted to probate on May 14, 1920; that the omission of plaintiffs and defendants, children and grandchildren, from said will, was not intentional, and that therefore the will was void as to them; that the other defendants claimed some interest in the property by reason of certain transactions had with the deceased, said attorneys having acquired title to certain real estate from the widow, since his death. In the second cause, they charged that the defendant Q. P. McGhee held the legal title to certain real estate, under oral agreement with Mr. Courtney in his lifetime, by which his heirs owned an undivided one-half interest therein. The third cause had to do with the personal property of the estate and sought, on the ground of fraud, cancellation of an order of the county court of June 3, 1921, setting aside all of the same to the widow. A demurrer was sustained to this cause, but the issue therein was raised by answer of defendants, setting up said order of June 3rd, and claiming thereunder, to which plaintiffs replied, setting up the same grounds for cancellation, as in this cause three. The fourth cause attacked, as fraudulent and void, an order of the county court of December 5, 1922, approving the final report of Ann E. Courtney and purporting to assign the entire estate to her. The fifth cause alleged said widow and McGhee had dissipated a large part of the personal property, praying for receiver. The sixth cause charged that a recorded purported warranty deed from John L. Courtney and Ann E. Courtney to the latter, conveying the greater portion of the real estate to her, was forged, praying its cancellation. They sought cancellation of said orders distributing and assigning the estate to the widow, and asked that her distributive share be charged with the amounts unlawfully disposed of. In addition to general denial, the matters and things alleged by defendants will appear otherwise in this opinion. Judgment was for plaintiffs substantially according to their prayer — finding that the omission to mention the children and grandchildren in said will was not intentional; that they and said widow were the only heirs, decreeing partition accordingly; ordering accounting by said widow, and charging her interest with the property disposed of by her; canceling said order of June 3, 1921, as false, fraudulent, and void, and also said decree of December 5, 1922, and said deed. Ann E. Courtney and Q. P. McGhee appeal. They argue first that the district court was without jurisdiction, and that this action is a collateral attack upon the judgment of the county court. The said contention is that the judgment is not supported by the evidence and is against the weight thereof. Our duty is to consider and weigh the evidence, and apply the equitable rule as to the quantum thereof.

1. It is well settled that in a proceeding to probate a will, the only issue triable is the factum of the will, or devisavit vel non. In re Allen's Will, 44 Okla. 392, 144 Pac. 1055, followed in numerous decisions, including Armstrong et al. v. Letty et al., 85 Okla. 205, 209 Pac. 168. In such proceeding, the court cannot construe or interpret a will, or distinguish between a valid or void disposition of property. Brook v. Kie er, 59 Okla. 5. 157 Pac. 88. On the probate of the will in the instant case, the court could not determine the rights of the pretermitted children herein.

2, 3. From Elrod et al. v. Adair, 54 Okla. 207, 153 Pac. 660, to Jackson v. Porter et al., 87 Okla. 112, 209 Pac. 430, it is held that the district court has power to vacate and annul orders and judgments of other courts in a proceeding brought for that purpose, for fraud of the parties, inducing and entering into such order or judgment, where such fraud is extraneous to the issues involved in the proceedings attacked. One species of such extraneous fraud is that which prevents the other party from having a fair opportunity to present his case, and it is immaterial, when a judgment is attacked on this ground, whether the attack is denominated direct or collateral. Gray et al. v. McKnight et al., 75 Okla. 268, 183 Pac. 489, citing Griffin et al. v. Culp et al.,

68 Okla. 310, 174 Pac. 495. Plaintiffs' allegations are sufficient to come within this rule, and thus to confer jurisdiction on the district court in this case. Also, as we shall see, the evidence is sufficient to sustain the judgment of the court in canceling said orders of the county court on such grounds so alleged. The district court, having jurisdiction in partition, had also incidental jurisdiction on issues joined for that purpose, to determine whether the children and grandchildren took under the law or were barred by the will pretermitting them.

4. As shown by the inventory filed by the widow, deceased owned 1,075 acres of land in Oklahoma, estimated value, $70,000, subject to about $26,000 mortgage indebtedness, and town property, estimated value, $15,000. As shown by the order of June 3, 1921, purporting to assign same to the widow, the personal property consisted of notes due the estate, aggregating $3,929.93; Liberty Bonds, $20,050, appraised at $17,042.50; cash on hand at death of Mr. Courtney, $7 000: Baby Bonds, about $3,000, and balance due on a certain contract, $4,500. The personal property assigned and turned over to the widow aggregated $34,972.43.

Section 1354, C. O. S. 1921, et seq., provides that after four months from the issuing of letters testamentary, any heir, devisee, or legatee may obtain a legacy or share in the estate to which he is entitled, on giving bond with security for the payment of his share of the debts of the estate; that the same notice must be given as for the settlement of an account of an executor: that any person interested in the estate may resist the application. In an administration proceeding, an order confirming sale of real estate that has not been appraised within a year, or that has been sold for less than 90 per cent. of its appraised value, is void for want of jurisdiction. Section 1280, C. O. S. 1921; Glory v. Bagby et al., 79 Okla. 155, 188 Pac. 881. Likewise, we hold that the giving of a bond by an heir or legatee, under the foregoing sections, to obtain a legacy or share of the estate, is jurisdictional. The county court was without jurisdiction to assign all the personal property in the instant case to the widow without first requiring such bond. It was so held in Re Hawgood's Estate, 37 S. D. 565, 159 N. W. 117, followed in Re Packer City Tire & Rubber Co. (S. D.) 162 N. W. 897, since there was no provision of the statute of that state—and there is none in this state—authorizing the county court to dispense with such bond. The importance of the statutory requirement appears from the facts of the instant case.

Thus, said order of June 3, 1921, was void, and could be attacked even collaterally.

5. Notwithstanding the issues had been joined in the instant case in the district court prior to November 10, 1922, by original petition of plaintiffs and answers of defendants' involving the construction of said will, on which depended the rights of said pretermitted children and grandchildren, and attacking said order of June 3, 1921, said widow, through her attorney, Mr. McGhee. on November 10, 1922. filed her final account and petition for assignment of all of said estate to her under said will. Proceedings were had for procuring, and they did procure, from Mr. Burns as such special county judge, a purported final decree dated December 5, 1922, approving and settling the final account of the administratrix, and assigning the entire estate to her. Messrs. McGhee and Burns were then defendants in the instant action in the district court, and had filed their answers to the original petition. They held property of the estate acquired from the widow since the death of Courtney. They knew the disposition of the estate was involved and had joined in that issue. Nevertheless, McGhee, as attorney for the widow, and Burns, as special judge, thereafter conducted the proceedings for decree so distributing the estate to the widow. The amended petition of plaintiffs attacking also this decree was not filed until September, 1923. The final report of the widow was largely in blank—its substance being that all debts had been paid and the widow was entitled to all the estate under the will.

Much evidence was adduced pro and con as to the fraud in procuring said decree of December 5th. We do not deem it necessary to review or weigh the evidence on this branch of the case. Since the district court acquired jurisdiction in this case filed in April, 1922, prior to the said proceedings in November and December of that year, we hold also that the final decree distributing the entire estate to the widow, dated December 5, 1922, and approving her accounts, was void. Irrespective of fraud in connection therewith, acquisition first by the district court, of jurisdiction of the very matters attempted to be adjudicated, was exclusive of such action by the county court.

"Where two actions between the same parties, on the same subject, and to test the same rights, are brought in different courts having concurrent jurisdiction, the court which first acquires jurisdiction, its power being adequate to the administration of complete justice, retains its jurisdiction and may dispose of the whole controversy, and no court of co-ordinate power is at liberty to

interfere with its action. This rule rests upon comity and the necessity of avoiding conflict in the execution of judgments by independent courts, and is a necessary one because any other rule would unavoidably lead to perpetual collision and be productive of most calamitous results." 15 C. J. 1134.

The rule prevails in this jurisdiction. Cromwell v. Hamilton, 87 Okla. 66, 209 Pac. 395; Pippin v. Brd. of Com'rs, 87 Okla. 177, 209 Pac 930.

While from the foregoing, we determine that said orders of the county court were void and that the district court had jurisdiction herein, we consider the following evidence, as the trial court no doubt did, as having probative value on the remaining questions discussed in this opinion: Defendant McGhee prepared the will in controversy in the latter part of 1919, and with the lady, who later became his wife, witnessed the same. He filed the petition and represented the widow in the probate of said will, and at all other times. He became county judge in January, 1921. At the April term, 1921, he disqualified in this matter, and defendant Burns was elected special judge in this case, McGhee continuing during his term of office to act as attorney for the widow in this case, contrary to section 4093, C. O. S. 1921. The appearance docket of the county court, under date 1921, shows "May 1, inventory filed as of 1-18-22." Under the same date, and following said entry and said order, are shown the filing of the petition for allowance, being the petition on which the order of June 3, 1921, was made, assigning all personal property to the widow, and proof of posting and oath; an order for hearing; and, under date June 3rd, decree was filed and recorded. It was the theory of plaintiffs that all of said orders were in fact not made nor entered until September, 1922, the instant case having been filed on April 12, 1922. One of the attorneys for plaintiffs testified, in substance, that, as such attorney, he examined the records of the county court in July, 1922, and that at that time none of said orders above referred to were noted upon the appearance docket, and none of same were in the files of this case, and that the inventory purporting to have been filed May 1, 1921, and filed as of 1-18-22, was not noted at that time upon the appearance docket, nor was it in the files. This examination by the attorney was more than a year after the purported filing date of said documents. As a circumstance tending to show that the inventory was not actually filed on May 1, 1921, but was filed in 1922, as claimed by plaintiffs, and thus corroborating the testimony of their attorney, testi-

mony of the deputy clerk indicates that if the entry had been made in 1921, it would not have been written as of 1922; the inference being that the force of habit caused same to be written as of 1922, when it is claimed it was in fact written, and that the other three entries of May 20, 1921, for the allowance, since they followed the inventory, were also in fact entered in 1922. When the probate case was filed, a deposit of $25 was made, as shown by the appearance docket. The law requires that all fees earned during each calendar month shall be paid to the county treasurer and report thereof made to the county commissioners each month. Pursuant thereto, the clerk, at the end of each month, so ruled the docket as to show the total amount of fees earned in the case, and kept his reports to the county commissioners in what is designated in the evidence as "Schedule B." This law and custom was carried in said probate case until May 1, 1921, showing a balance at that time of $11.80. It is shown that the total amount of fees earned during the month of May, 1921, for filing the four documents referred to above, is 90 cents. It is not shown that the docket was ruled for May and said amount paid to the treasurer for that month. The docket shows that for recording the decree of June 3rd a fee of 70 cents was earned, and that the total of these four items, $1.65, was paid to the county in September, 1921, but said amount is not shown on the schedule as having been paid to the county for September, 1921, and the fact is so admitted by the officer. Said amount was not paid to the county nor reported to the county commissioners as paid until September 30, 1922, more than a year after it should have been paid, according to both the law and the custom of the office, if said documents were filed when they purport to have been. This circumstance is urged as tending to show that the fee for filing and recording said decree assigning all the personal property to the widow was not earned until September, 1922, which also tends to show that such orders had no existence until that date, and corroborative of attorney for plaintiffs. In the journal, in which probate records are recorded, the said order setting the petition for allowance for hearing, dated May 20, 1921, and the order of June 3, 1921, setting aside the personal property, are recorded following the record of orders in other cases dated as late as September 28, 1922; and are followed by the record of other orders in still other cases dated September 29, 1922. This is also a circumstance tending to show that the orders were not in existence until September, 1922.

There is evidence to show that the stamp used in filing papers in the county court contained the words "district court"; that on instruments filed prior to September 30, 1921, the word "district" was changed with pen to "county"; that some time between September 30, and December 17, 1921, the words "district court" were removed from the face of the stamp, and the said controverted documents were stamped in manner omitting the words "district court". This tends to show that they actually came into the hands of the county clerk sometime after September 30, 1921, and maybe much later. There is also some evidence tending to show that the typewriter on which said order of June 3rd was written, was not purchased by the county nor received in the clerk's office until May 17, 1922. McGhee testified that he prepared all the questioned documents and conducted the proceedings as attorney for the widow before Mr. Burns as special county judge. Upon July 15, 1921, he filed his petition in the district court, duly verified by him, to recover on a promissory note for $37,000, alleging the same was executed by the defendant to himself and J. L. Courtney, and that at that time he and said Ann E. Courtney, as executrix of the estate of John L. Courtney, were the legal and rightful owners and holders of such note. Notwithstanding, the purported decree of June 3rd, more than one month prior to the filing of this suit, assigned the interest of the estate in this particular note to said widow. It is argued that this tends to show that said decree in fact had no existence on July 15, 1921. The answers of defendants filed in September, 1922, to the original petition of plaintiffs herein, did not set up any rights under said decree of June 3, 1921. In their answer to amended petition filed September 29, 1923, said order of June 3rd is specifically pleaded and set up as an adjudication by the county court that said widow was the sole beneficiary and entitled to all the personal property so assigned to her. This is argued as another circumstance tending to show the nonexistence of said order of June 3rd until September, 1922. The plaintiffs testified that they had no notice or knowledge whatever of the proceedings whereby any of said orders were procured.

6, 7. Section 11255, C. O. S. 1921, is:

"When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator, as if he had died intestate, and succeeds thereto as provided in the preceding section."

The latest announcement of this court, construing said statute, is Riley et al. v. Collier et al., 111 Okla. 130. 238 Pac. 491:

"Formal wills being required to be in writing, the intention of the testator to omit certain children of a deceased son, who are not mentioned in the will, must be determined from the language of the will itself, aided by attendant circumstances, excluding evidence of oral declarations by the testator at variance with or in amplification of the language of his written testament."

It is contended that the judgment holding the will to be void as to the children and grandchildren is contrary to the evidence. Within its four corners, or by its language, the will does not show any intention so to pretermit. The court heard the attendant circumstances, and also admitted certain evidence of declarations of deceased concerning the issue of his intention. If such declarations were in corroboration or amplification of the will, they were immaterial; if in derogation thereof, they were incompetent under the rule herein.

8. The first circumstance relied upon by defendants is the fact that on the same day on which said will was executed, Mr. Courtney, joined by his wife, executed a deed to her, conveying practically all of his real estate. If this deed were genuine it had been of probative value on this issue. The court found the same to have been forged, and, since such finding is not clearly against the weight of the evidence, as hereinafter discussed, same cannot be considered in this behalf. The next circumstance is the admitted fact that, prior to the date of his will, Mr. Courtney gave each of his five children $1,500, and also to some of them he gave certain parcels of real estate. He gave nothing to his grandchildren, the children of his deceased daughter. These gifts, it seems from the record, were not nearly equal in value to the shares the children would take under the law. The force of these facts, as attending circumstances to show that Mr. Courtney intended pretermission, is destroyed by section 11313 of the Statutes, C. O. S. 1921, providing that:

"All gifts and grants are made as advancements, if expressed in the gift or grant to be so made, or if charged in writing by the decedent as an advancement, or acknowledged in writing as such by the child, or other successor or heir."

It was not so expressed or charged as to these gifts. The testimony of Mr. McGhee that these gifts were advancements was incompetent under the rule. Another circumstance urged is that said widow is a Cherokee Indian and was married to decedent pri-

or to her allotment; that by reason thereof deceased was given the right to occupy a large acreage of unallotted lands, forming the basis or start for the accumulation of his fortune; that therefore the natural and just disposition of all of his property was to his wife. We do not see the force of this. It is not contended that his fortune itself was derived from the Indian rights of the widow—but only the opportunity to accumulate same. The widow, no doubt, assisted in accumulating this fortune. The law protects her in this behalf and as surviving widow. Why should he not consider that the circumstance of his fortunate Indian marriage also inured to the benefit of their own flesh and bone, and thus be as consistent with an intention not to pretermit the children as otherwise—though not impelling either way. The only other attending circumstance—strongly relied upon — is the testimony of Mr. McGhee that he prepared the will together with two other proposed wills, in the latter two of which provision was made for $25 to each of the children and grandchildren; that the three drafts were submitted to Mr. Courtney, inclosed in an envelope; that he considered same until the next day, when he returned to the office of Mr. McGhee and executed the instant will; that the other two were destroyed by Mr. Courtney; that Mr. Courtney stated, in substance, that he preferred the instant will because it gave all of his property to his wife. Such envelope was introduced in evidence and bore a certain indorsement, including the names and ages of his children and grandchildren. Under the said rule in the Riley Case, supra, the declarations of Mr. Courtney were immaterial or incompetent, and should have been excluded. The naming of his children and grandchildren on said exhibit might have probative value as tending to show his intention to omit them from his will. However, the trial court saw the witness and saw this original exhibit, which is not in the record on appeal, and had a better opportunity than this court to determine the credibility and weight of this evidence. It would seem that Mr. McGhee, being an attorney, would have advised and caused Mr. Courtney, at least, to name his children and grandchildren in his will, and show by that instrument that he had them in mind and did intend to omit them. The probability of his so doing lessens the weight of his testimony adduced by the indorsement on said envelope on the question of intention. McGhee, advising how to make his, Courtney's will, would better to have expressed in the will the intention to pretermit—if Courtney had such intention—

rather than to rely upon the list of their names written upon an envelope by himself, McGhee. The fact that he did not do so, as a good lawyer and faithful, tends to show that Courtney had not such intention, a fortiori, if such names were before Courtney on the envelope. The evidence tends to show that this estate was worth perhaps more than $75,000. It had been a very small matter to mention these children and devise to each some amount. Mr. Courtney's home was open to them at all times and they visited him frequently. The burden was on defendants to show from the four corners of the will, aided by the attendant circumstances, that Mr. Courtney intended so to pretermit his children and grandchildren. It is unnecessary to review other facts and circumstances tending to the contrary. The judgment is not clearly against the weight of the evidence on this issue.

9. In the afternoon of the day on which said will was executed, Mr. Courtney, joined by his wife, executed a warranty deed conveying the major portion of his real estate to the latter. Plaintiffs contended, and the court found, that this deed was a forgery. A large number of genuine signatures of Mr. Courtney were introduced at the trial. Defendants have not brought to this court any of the original and genuine signatures of Mr. Courtney, except that shown by one deed executed about five years prior to the deed in controversy. They have brought the original deed containing the disputed signature. The trial court had the opportunity to compare the signature in controversy with numerous admitted signatures other than the one admitted signature before us. Plaintiffs produced one handwriting expert who based certain of his conclusions, that the signature in question was a forgery, upon comparison with certain admitted signatures that are not before this court. It is the theory of plaintiffs that the alleged forged signature of Courtney was made by someone other than himself, by placing a genuine signature upon this deed and tracing same with some blunt instrument, and thereafter retracing the indentation with pen and ink. Ann E. Courtney's genuine signature appears immediately under the one in question and seems very regular. From the reverse side of the instrument, when held to the light, the ink may be seen. The disputed signature of her husband just above her signature is written heavily with ink. Not only in his disputed signature may the ink be discerned from the reverse side, but there appears on the reverse side a sort of embossed condition of the paper made in writ-

ing Mr. Courtney's name. We cannot say from the face of the disputed signature that the nibs of the pen did not spread in making any parts of the letters, for, due to the quantity o. ink, if there ·was such spreading, it cannot be easily discerned. This tends to prove the theory of plaintiffs, for, if the pressure on the pen was so great as to cause said embossed condition, it is quite probable that the nibs of the pen had spread during the entire progress of the signature. Moreover, the indentation shown on the ‹pposite side seems to have been made by a single instrument and not by two nibs of a pen point, that is, not made by two points thus spread apart by pressure. Moreover, the only admitted signature of Mr. Courtney in this record seems to have been written with about the same pressure on the pen as that of Ann E. Courtney, written just above the same, showing the use of very little, if any more, ink, and not causing such indentation to show on the opposite side as appears in the disputed signature. The expert, on behalf of the plaintiffs, pointed out certain other characteristics tending to show that the signature in question was a tracing. On the other hand, a banker and numerous other persons, acquainted with the handwriting of Mr. Courtney, testified that the signature in controversy was the signature of Mr. Courtney, or that it looked like his signature. We think it looks like his signature—very naturally, if it were traced. It is contended that the expert should be discredited because he had been paid considerable fees. The weight to be given his testimony in this particular matter, depends upon the soundness of the comparison and observations he made tending to show that this signature was a tracing of a genuine signature. In this respect, we think it has some probative value. When we consider this, together with the physical status of the controverted signature, we cannot say that the finding of the court that this deed was a forgery is clearly against the weight of the evidence, notwithstanding Mr. McGhee testified that he saw Mr. Courtney execute this signature. The notary who acknowledged this deed did not testify that he saw Mr. Courtney sign the same, but based his knowledge of the matter in controversy solely on the fact of his certificate and seal. We are not unmindful, as held in Dyal v. Norton, 47 Okla. 794, 150 Pac. 703, and later cases, that the acknowledgment of a deed is prima facie evidence of its execution, and that evidence to impeach a certificate of acknowledgment should be clear, cogent, and convincing. The evidence against this deed meets this requirement. The record of nearly 900 pages discloses many minor facts and circumstances not here related, tending to support the findings and judgment of the trial court as to each issue. From the whole record, we cannot say that the judgment of the court is contrary to the weight of the evidence.

Let the judgment be affirmed, and the cause remanded for further proceedings, for partition and accounting, and otherwise according to the judgment and the law.

By the Court: It is so ordered.